707 P.2d 944

**STATE of Arizona, Appellee,**

v.

**Ivan Jean SALAZAR, Appellant.**

No. 6476.

Supreme Court of Arizona,
En Banc.

Sept. 17, 1985.

Robert K. Corgin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Div., Galen Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, John Rood, III, Deputy Public Defender, Phoenix, for appellant.

GORDON, Vice Chief Justice.

A jury convicted defendant, Ivan Jean Salazar, of dangerous or deadly assault by a prisoner. A.R.S. § 13–1206. Pursuant to the version of A.R.S. § 13–1206 in effect at the time of the crime, the trial court sentenced defendant to life imprisonment without possibility of any release for twenty-five years. *See State v. Gonzales*, 141 Ariz. 512, 687 P.2d 1267 (1984).

Defendant and Daniel Eastman were cellmates at the Maricopa County Jail. They were housed in an area of the jail reserved primarily for prisoners with emotional problems. Around 4:30 a.m. June 25, 1983, defendant and Eastman were observed in their cell behaving normally. A little after 4:30, a guard heard a suspicious noise in the jail but found nothing upon investigation. At about 5:00 a.m., Eastman was found in the cell with blood on his face. In addition, blood was found on the upper and lower bunks, the cell floor and bars, and in the toilet. The only people in the cell were defendant and Eastman, and no other prisoner could gain access to the cell.

Eastman, 71 years old, was five feet six inches tall and weighed 124 pounds. After he was removed from the cell, it was discovered that he had suffered a concussion from several blows to his head. His left wrist and some ribs were fractured. After spending some days in the hospital, Eastman died of bronchopneumonia, a complication from the broken ribs.

At the time of the incident, defendant was 28 years old, five feet eleven inches tall, and weighed 164 pounds. After he was taken from the cell, detention officers observed blood on his fingers, a bruise on one hand, and a slight cut on the other.

At trial, the state argued that circumstantial evidence showed that defendant assaulted Daniel Eastman causing his eventual death. Defendant, however, maintained that he was insane, or, alternatively, that he acted in self-defense. Defendant raises one issue on appeal.

■ Defendant argues that trial counsel was ineffective, thus denying defendant a fair trial. We have recently outlined the applicable Arizona test in this area. *State v. Gerlaugh*, 144 Ariz. 449, 698 P.2d 694 (1985). In deciding whether trial counsel was ineffective and whether such ineffectiveness warrants a new trial, this court applies a two-pronged test: 1) was counsel's performance reasonable under all the circumstances, i.e. was it deficient? *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985) (applying to cases tried or pending on appeal on or after January 9, 1985, *State v. Gerlaugh, supra*); and 2) was there a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different," the prejudice requirement. *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984) (quoting *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984)) (applied retroactively to cases after *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982)). Our test for effectiveness of counsel conforms to the standard announced in *Strickland v. Washington, supra*.

■ In deciding an ineffectiveness claim, this court need not approach the inquiry in a specific order or address both prongs of the inquiry of the inquiry if the defendant makes an insufficient showing on one. *Strickland v. Washington, supra*.

"In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that

course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."

*Strickland v. Washington, supra,* 466 U.S. at ——, 104 S.Ct. at 2069–70, 80 L.Ed.2d at 669.

In the instant case, we deem it appropriate to apply the prejudice component first. Thus, assuming *arguendo* that counsel's performance was ineffective, we examine whether there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Lee, supra.*

■ We think not. Considering the totality of the evidence before the jury, *see Strickland v. Washington, supra,* we do not believe counsel's alleged errors would have affected the result of the proceeding. First, the circumstantial evidence overwhelmingly shows that Daniel Eastman was assaulted in his cell, and that defendant was the only person who could have committed the crime. Defendant and Eastman were alone in a locked cell. A half hour before Eastman was found beaten, both defendant and Eastman were observed in the cell behaving normally. Eastman sustained serious injuries to his head, wrist, and ribs. It is highly unlikely that these injuries could have been self-inflicted. The much younger and stronger defendant was found with blood on his fingers and only slight wounds to his hands. Such injuries strongly indicate that defendant was beating Eastman. Thus, the circumstantial evidence not only shows that defendant attacked and beat Eastman, but it also tends to negate the possibility of self-defense.

■ Second, the evidence overwhelmingly shows the defendant's legal sanity at the time of the crime. Defendant's own expert could only testify that it was his "educated guess" that defendant was suffering from a major mental disorder at the time of the crime. The witness, however, could not be "100% sure" of this diagnosis. The balance of the expert testimony indicated that though antisocial, defendant was legally sane at the time of the crime. By far, the most convincing evidence came through the testimony of Dr. Bancroft Brooks, who had years of exposure to defendant in the New Mexico State Hospital. Brooks testified that defendant had an antisocial personality and a serious drug problem but that he was not legally insane. Dr. Brooks also stated that defendant was "malingering" or faking his insanity. This diagnosis was substantially confirmed by three other experts.

■ In reviewing the evidence in an ineffectiveness of counsel case, we must, of course, be cognizant that some of counsel's errors can affect the state of the evidence before us.

"Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Strickland v. Washington, supra,* 466 U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 698.

■ Defendant has pointed to numerous instances of alleged ineffective assistance of counsel, but we do not think these alleged errors substantially affected the record before us. In his most serious allegation, defendant points to trial counsel's cross-examination of Dr. Brooks. We agree that this cross-examination was unartful. Counsel asked Dr. Brooks numerous open-ended questions allowing Dr. Brooks to ramble and explain in detail why he thought defendant was legally sane.

 

Nevertheless, Dr. Brooks' testimony on direct examination was damaging to defendant's case, and his statements on cross-examination did not substantially add to this damage. Counsel's cross-examination could have been better, but in view of the strong evidence of defendant's sanity, we cannot say the record before us was affected. Furthermore, as the jury's verdict was strongly supported by the evidence, it is not likely that any of counsel's other less serious alleged errors could have had a substantial effect on the record before us.

As defendant has failed to show that the alleged ineffective assistance of trial counsel caused any prejudice, we need not reach the performance question. Pursuant to A.R.S. § 13–4035, we have searched the entire record for fundamental error and have found none. The judgment of conviction and sentence imposed are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.