724 P.2d 1256

**STATE of Arizona, Appellee,**

v.

**Darrell Kay FATTY, Appellant.**

**No. 1 CA–CR 9432.**

Court of Appeals of Arizona, Division 1, Department C.

May 20, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Kathleen Kelly Walsh, Flagstaff, for appellant.

## OPINION

SHELLEY, Judge.

Appellant Darrell Kay Fatty was charged by indictment with three counts of sexual assault, one count of kidnapping, one count of aggravated assault and one count of burglary. The state filed a motion

to amend the indictment to allege the dangerous nature of the felonies. The trial was to a jury, which found appellant guilty on all six counts. The jury found all offenses, except the second and third sexual offenses, to be dangerous. Before sentencing, on the motion of appellant, the court ordered a presentence psychiatric evaluation by Dr. Dean Gerstenberger.

Appellant was sentenced to 20 years each for sexual assault, dangerous, and kidnapping, dangerous. He also received 12 years on each count of sexual assault, nondangerous; seven years for burglary, dangerous; and 2.5 years for aggravated assault, dangerous. The kidnapping and burglary sentences were to run concurrently with each other but consecutively to the other sentences. The other four sentences were concurrent with each other. Appellant timely filed a notice of appeal.

The facts, briefly, are as follows, viewed in the light most favorable to sustaining the conviction. *State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App.1978). On May 10, 1985, the victim went to bed in her trailer home in Flagstaff, Arizona. On the morning of the 11th, she awoke to find a man over her, with a stocking over his face. She struggled with him. He put his hand over her nose and mouth. He turned her over, tied her hands behind her back with her bathrobe sash, turned her over again, and shoved a cloth in her throat. At first the victim thought she was going to die from suffocation by the cloth, but she worked the object out of her throat to the point where she could breathe through her nose. The assailant then proceeded to commit three separate sexual assaults. Afterwards, the assailant fell asleep on the victim's bed, and the victim managed to escape to the trailer of a friend.

The police were called and they found the assailant asleep on the victim's bed. Appellant was taken to the police station, where he was interviewed by Detective Costa. Appellant's initial comment to Costa was, "Boy, I think I've got myself in a lot of trouble this time." Appellant, after being given his rights by Detective Costa,

signed a waiver of rights form. The appellant then proceeded to detail the events of the night, admitting the three sexual assaults. He also made a written statement.

At trial, the major issue of contention was whether appellant had put a cloth material in the victim's throat and whether that action made the crimes "dangerous" pursuant to A.R.S. § 13–604(K). Appellant's admissions to the police had mentioned nothing about the cloth. The victim said nothing about the cloth in her initial interview with Detective Costa, but she referred to it in the written report Costa asked her to prepare. She had also told the doctor who interviewed her in the emergency room about the cloth. After later reflection, and examining her bedroom, the victim believed that one of her socks was the cloth used by the appellant. After the state rested, the defense moved for a directed verdict on the allegations of dangerousness. The motion was denied.

The first issue presented by appellant is whether the trial court erred by failing to direct a verdict as to the allegations of the use of a dangerous instrument, to-wit, the sock. Appellant contends there was insufficient evidence that the sock was actually in the victim's throat or impaired her breathing. He argues that the cloth was merely in her mouth, and that she could, at all times, breathe through her nose. He contends that, therefore, the "cloth material was never in a position to cause any harm to the victim." The state argues that it was a jury question whether the sock was in a position to harm the victim.

The Arizona statutes define "dangerous" instrument as *"anything* that *under the circumstances in which it is used,* attempted to be used, or threatened to be used *is readily capable* of causing death or serious physical injury." A.R.S. § 13–105(7) (emphasis added). Appellant does concede that a piece of cloth shoved down the throat could cause death. As noted in *State v. Befford*, 148 Ariz. 508, 715 P.2d 761 (1986), "most household items, 'under the circumstances', could conceivably be used as a deadly weapon." 715 P.2d at

763. Appellant's argument appears to be that because the cloth was never actually in the throat, only in the mouth, it was not "readily capable" of causing death. We do not agree.

In *State v. Borbon*, 146 Ariz. 392, 706 P.2d 718 (1985), the defendant went up to the attendant's booth at a self-service gas station and began hitting the booth with a tire iron. The booth was locked and the windows were made of bulletproof glass, so the defendant could not get into the booth to harm the attendant. Defendant argued he was entitled to a directed verdict because the state had failed to prove that the tire iron was "readily capable" of causing physical injury. He argued that the evidence showed the defendant could not cause injury because of the construction of the booth. The Arizona Supreme Court disagreed, stating that the "[d]efendant began hitting the door so violently that the occupant was concerned that defendant would be able to break down the door and harm him. We find this evidence sufficient to satisfy the statutory language...." 146 Ariz. at 397, 706 P.2d 718.

In this case, the victim clearly testified about her fear regarding the cloth. She testified:

A. He was forcing with his fingers this down my throat. I started panicking and I couldn't—when it got down to maybe about here, I couldn't breathe and I couldn't get any air, it was blocked, and I just—well, I was afraid that I was going to die, and it was about maybe 30 seconds that it was blocked and I couldn't get any air.

Q. Were you able eventually to get some air?

A. Yes.

Q. Would you tell the jury how you accomplished that?

A. I was able to move the gag out of my throat with my tongue, trying to ease it up out of there so I could breathe. At some point I was able to start breathing through my nose also.

Q. Did this object in your throat cause you to react in any way, did you choke or gag or anything like that?

A. I was feeling like I was gagging.

Dr. William Wilson, who treated the appellant in the emergency room at Flagstaff Medical Center, testified that the victim told him the defendant had stuck something in her *throat*. He testified that the word "throat" appearing in his report, was her word, not his. He testified that if an object is in the throat and is obstructing breathing, it is life-threatening. He testified a lack of air may cause brain damage. He testified the obstruction may cause death within seven to eleven minutes, if not removed.

Appellant contends that the evidence shows that the victim could always breathe through her nose. This misstates the testimony. Despite cross-examination which attempted to establish the above position, the victim testified, "I believe I had to move the sock [to breathe]" and "I was not always able to breathe, no". We may take judicial notice of the fact that if a person cannot breathe, that person will die. Moreover, Dr. William Wilson testified as to the specifics of asphyxiation. Along with appellant's testimony, this was adequate evidence to support the jury's finding that the appellant employed a dangerous instrument.

Appellant's next argument is that, even if the finding that the first sexual assault was "dangerous" was not erroneous, the finding that the kidnapping involved the use of a dangerous instrument was erroneous because the kidnapping was completed before the sock was used. He argues that the kidnapping was complete when he first touched her by putting his hand over the victim's mouth and nose.

■ We, however, concur with the state's position that the use of the sock was part of the restraint used in connection with the infliction of the first sexual offense. *See* A.R.S. § 13–1304(A)(3). The appellant took several steps to restrain the victim prior to the occurrence of the act of vaginal intercourse. He first placed his

hand over her mouth and nose. He ordered her to stop screaming, and she assented to this. He then tied her hands behind her with her robe sash, and put the sock in her mouth. He was then restraining her by putting his weight on her body. Only when all of the above were accomplished did he commit the first sexual assault.

Appellant's assertion that the kidnapping was complete when he put his hand over her mouth and nose is true in one sense. The appellant could at that point have been charged with kidnapping, even if he had gone no further. However, the kidnapping, *i.e.*, the restraint, was not actually "completed" until the appellant completed the sexual assaults and the victim fled from the trailer. The sock was clearly used during the course of the restraint. Thus, the jury had sufficient evidence to find the kidnapping charge to be dangerous and the trial court did not err by failing to direct a verdict on this point.

Illustrating the point is *State v. Romero*, 135 Ariz. 102, 659 P.2d 655 (App.1982). Defendant was unarmed when he entered the victim's home, but armed himself with a weapon taken during the burglary. He was tried and convicted for first-degree burglary (burglary while armed). He argued he could not be convicted because he was not armed when he entered the residence. Division 2 of this court rejected the argument and affirmed the conviction.

■ Appellant next argues that the trial court erred by failing to direct a verdict on dangerousness as to the aggravated assault count. Once again, he argues that the crime of aggravated assault was complete when he first assaulted, *i.e.*, touched, the victim. It is true that the jury was only instructed on the form of aggravated assault where "a person commits the assault after entering the private home of another with the intent to commit the assault." *See* A.R.S. § 13–1204(A)(3). Thus, once again, appellant could have been charged with aggravated assault had he done no more than put his hand over the victim's face. However, the assault did not

end there but he continued to touch her until the victim got out of the bed as appellant appeared to be falling asleep. Thus, the sock was used in the course of the continuing aggravated assault. *See State v. Romero, supra*. The trial court did not err on this point.

The fourth issue raised by appellant is that the trial court erred by denying further presentence examination of appellant's mental condition. The appellee points out that Dr. Dean Gerstenberger, appointed by the court for a presentence psychiatric evaluation, testified that appellant was not schizophrenic and that no further examination was necessary.

■ We find no error. Whether to order tests pursuant to Rule 26.5, Arizona Rules of Criminal Procedure, is within the trial court's discretion. *State v. Clabourne*, 142 Ariz. 335, 690 P.2d 54 (1984). Here, the court did order an examination by Dr. Gerstenberger. Here, just as in *Clabourne*, the doctor did an examination, and found the defendant competent. 142 Ariz. at 347, 690 P.2d 54. In *Clabourne*, the court found no error in the trial court's failure to order additional tests. The trial court here did not err in refusing to order additional tests.

■ The fifth issue raised by appellant is that the trial court failed to state the reasons why it imposed consecutive sentences. *See* A.R.S. § 13–708. It is true that the trial court did not specifically state, "I am imposing consecutive sentences because...." However, the court first stated, "the court must make findings relative to aggravating and mitigating factors." The court then set forth said factors. After setting forth each sentence, the court then commented on the nature of the crime, the disrespect for the victim, etc. The court directly thereafter stated which counts would run concurrently and which would run consecutively.

■ The court's statement was adequate. First, it is clear that the second recitation of factors related to the imposition of consecutive sentences, because the

court had already separately listed all the factors for imposing aggravated sentences. Moreover, it has been previously held that a court's reasons need not be stated twice, once to satisfy § 13–702 (aggravated sentence), and separately to satisfy § 13–708 (consecutive sentence). *See, e.g., State v. Lamb,* 142 Ariz. 463, 690 P.2d 764 (1984). Thus, the trial court went beyond the minimum procedure necessary to comply with § 13–708.

■ The sixth issue raised is that the trial court's order that two aggravated sentences run consecutively constitutes impermissible double punishment where both the aggravation and the consecutiveness are based in part on the use of the same dangerous instrument. This argument has been rejected. *E.g., State v. Roberts,* 131 Ariz. 519, 642 P.2d 864 (App.1981), *approved in part, vacated on other grounds,* 131 Ariz. 513, 642 P.2d 858 (1982).

The last issue raised is that the sentences given to appellant were excessive. Appellant urges that the trial court gave insufficient consideration to mitigating factors such as his lack of a prior felony record, his remorse, statements in support of his character, and his drug/alcohol problems.

■ When a sentence is within statutory limits, it will not be modified on review unless from the circumstances it clearly appears that the trial court abused its discretion by showing arbitrariness or capriciousness, or by failing to conduct an adequate investigation into the facts. *E.g., State v. Walton,* 133 Ariz. 282, 650 P.2d 1264 (App.1982). An appellate court should be very hesitant to interfere with the trial court's imposition of an aggravated sentence as long as there is reasonable evidence to substantiate the aggravating circumstances found by the trial court. *State v. Meador,* 132 Ariz. 343, 645 P.2d 1257 (App.1982). The trial court, by stating the aggravating factors it relied on, and showing a consideration of all the factors, has complied with A.R.S. § 13–702. *E.g., State v. Marquez,* 127 Ariz. 3, 617 P.2d 787 (App.1980).

■ As to the lack of a prior felony record, the trial judge expressly stated that he considered that factor. However, he stated he was not very impressed with that factor, because appellant had only been an adult for one year and thus had had little time to amass an adult felony record. This was certainly a reasonable method of evaluating this factor.

Certainly, remorse may be considered as a mitigating factor. However, the trial court is in the best position to consider whether or not expressed remorse is sincere. The trial court could have concluded appellant's statement of remorse was a sham to obtain more favorable sentencing. *See State v. Clabourne, supra.*

As to any alcohol or drug problems, the fact of appellant's alcoholism was apparent to the trial court from Dr. Gerstenberger's report and testimony and from the presentence report. The trial court is not required to find mitigating factors just because evidence is presented; he is only required to consider them. *E.g., State v. Cawley,* 133 Ariz. 27, 648 P.2d 142 (App. 1982).

As to statements concerning appellant's prior good character, the trial court received the testimony of appellant's fiancee, mother, and several other witnesses. Thus, the court necessarily considered this testimony, but was not required to find it as a factor weighing in support of mitigation. *State v. Cawley, supra.* The sentences imposed did not constitute an abuse of discretion.

Pursuant to A.R.S. § 13–4035, we have searched the record for fundamental error, and have found none. For the above reasons, the convictions and sentences are affirmed.

EUBANK, P.J., and HAIRE, J., concur.