793 P.2d 105

**STATE of Arizona, Appellee,**

v.

**Richard L. WEBB, Appellant.**

**No. 1 CA–CR 12158.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 9, 1990.

Review Denied July 10, 1990.

**350**

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., and Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GERBER, Judge.

Appellant, Richard L. Webb, was indicted on January 14, 1987, on one count of first-degree murder in violation of A.R.S. § 13–1105. Prior to trial, the state filed an allegation that the crime was of a dangerous nature. On September 8, 1987, a jury found appellant guilty under A.R.S. § 13–1104 of the lesser included offense of second-degree murder, a class one felony. The trial judge sentenced appellant to an aggravated term of seventeen years imprisonment with appropriate pre-sentence incarceration credit. Appellant filed a timely notice of appeal and raises the following issues:

(1) Was the appellant denied his right to effective assistance of counsel?

(2) Did the trial judge abuse his discretion by failing to limit the introduction of inadmissible evidence?

(3) Did the trial judge abuse his discretion by imposing an aggravated sentence?

(4) Did the jury instruction on self-defense impermissibly shift the burden of proof?

(5) Did the trial judge coerce a deadlocked jury into reaching a verdict?

## FACTS

The facts taken in a light most favorable to sustaining the verdict are as follows. Appellant is the oldest son of Beverly ("Shelley") Weitzel. In 1986, Shelley married the victim, Frank Weitzel. Shelley and Frank lived with their son Ryan and two of Shelley's children by a previous marriage, Jacob and Rochelle Webb.

On January 1, 1987, appellant traveled to his mother's home and received $300 cash as a late Christmas gift. That same day, he used the money to purchase a 9 mm. handgun. He then returned to his mother's home. Shelley and Frank Weitzel had been arguing. As appellant went to speak with his mother, Frank Weitzel left the house. Appellant spoke to both Shelley and his brother Jacob.

Later that evening, Frank Weitzel returned home. He encountered Webb outside the front door, and the two men argued. A struggle ensued during which appellant shot Weitzel four times, killing him almost instantly.

After the shooting, appellant entered the house and spoke briefly with Shelley and Jacob. He then drove away in his truck on a four-day trip to California. Approximately two hours after the shooting, Shelley called the 911 emergency number to report that her husband was lying in the yard. When police questioned Shelley, Jacob, and Rochelle concerning the incident, they initially claimed to have heard nothing nor to have even seen appellant that day. After further questioning, however, they acknowledged that they did see the appellant before and after the shooting.

Appellant disposed of the gun before he returned from California. It was not introduced as evidence at trial. At trial, appellant acknowledged that he shot Frank Weitzel but claimed that the shooting was an accident while they struggled over the weapon. Appellant also claimed that before the struggle, Weitzel had threatened to take his gun and kill him and his mother.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant first claims that his attorney was ineffective for (1) failing to object or objecting on improper bases to the admission of certain testimony and evidence; (2) for misunderstanding the Arizona rule on motions for judgment of acquittal; (3) for failing to object during closing argument; and (4) for failing personally to appear at the sentencing hearing.

To demonstrate ineffective assistance of counsel, appellant must satisfy a two-prong test. First, he must show that, under the circumstances, his counsel's actions were unreasonable under prevailing professional norms. *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied*, 471 U.S.

1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). Second, there must be a reasonable probability that, absent counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 398, 694 P.2d at 228; *State v. Lee*, 142 Ariz. 210, 219, 689 P.2d 153, 162 (1984). The court need not approach the inquiry in a specific order or address both prongs of the inquiry if the defendant makes an insufficient showing on either one. *State v. Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985).

Actions of defense counsel which appear to be trial tactics will not support an allegation of ineffective assistance of counsel. *State v. Espinosa–Gamez*, 139 Ariz. 415, 417, 678 P.2d 1379, 1381 (1984). Courts presume that counsel's conduct is trial strategy. *State v. Fisher*, 152 Ariz. 116, 118, 730 P.2d 825, 827 (1986), *citing Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694–95 (1984). In the instant case, we do not have the benefit of a Rule 32 post-conviction hearing as to the effectiveness of defense counsel.[1] Therefore, counsel's effectiveness must be judged solely from the record before us. *State v. Bush*, 148 Ariz. 325, 328, 714 P.2d 818, 821 (1986). In such a situation, appellant has a greater burden to overcome because the record seldom shows reasons for the attorney's decisions. The "strong presumption" is that counsel's actions were made for strategic or tactical reasons. *State v. Santanna*, 153 Ariz. 147, 150, 735 P.2d 757, 760 (1987), *citing Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2066, 80 L.Ed.2d at 693–95.

### 1. Counsel's Failure to Object to Admission of Certain Testimony and Evidence

Appellant first claims that counsel failed to object on hearsay grounds to admission of a tape recording of Shelley's phone call to the 911 emergency department made two hours after the shooting. However, the trial transcript shows that defense counsel *did* object to admission of the tape. He argued precisely that it was inadmissi-

---

1. The Arizona Supreme Court has recently recommended that when a defendant wishes to raise the question of ineffective assistance during the pending of his appeal, he should file the proper petition under Rule 32, Arizona Rules of Criminal Procedure. *State v. Valdez*, 160 Ariz. 9, 770 P.2d 313 (1989). *Accord State v. Carver*, 160 Ariz. 167, 771 P.2d 1382, 1390 (1989).

ble unless the state could establish a factual basis by showing that it was inconsistent with Shelley's trial testimony. Although defense counsel did not specifically use the word "hearsay", his statements show that he objected on the basis of hearsay and argued that the testimony did not fall within the "prior inconsistent statement" exception to the hearsay rule.

■ The trial court properly admitted the tape recording. It did not constitute hearsay. In her telephone call, Shelley stated that her husband was "laying out in the front yard" and she had no idea what was wrong with him. The state posited at trial that Shelley knew that Frank Weitzel had been shot by appellant and was trying to conceal her knowledge of that fact. The state did not offer the tape recording to establish the truth of the matter asserted (that her husband was lying in the front yard) but rather to show that she was concealing the crime with the claim she did not know what was wrong with him. *See* Rule 801(c), Arizona Rules of Evidence; *State v. Rivera*, 139 Ariz. 409, 413, 678 P.2d 1373, 1377 (1984).

Appellant also maintains that defense counsel failed to object to the admission of testimony concerning the family's activity between the time of the shooting and the arrival of the police. Appellant asserts that such testimony was irrelevant and therefore improperly admitted.

■ There is no merit to appellant's position. The evidence was relevant and admissible because part of the state's theory of the case was that the agreement among Shelley Weitzel, Jacob Webb, and appellant after the shooting to say nothing to the police was inconsistent with appellant's defense that the shooting was an accident. Rochelle's testimony that her mother and brother spoke to appellant after the crime was relevant to the state's theory that Shelley and Jacob agreed with appellant to conceal the crime. Likewise, any testimony by the police officers regarding what Shelley, Jacob, and Rochelle said to them was admissible to show that Shelley and Jacob planned to mislead the police. *See* Rule 803(3), Arizona Rules of Evidence.

■ Appellant also claims that defense counsel failed to object to the admission of two photographs of the appellant taken shortly after he killed the victim. According to appellant, defense counsel should have objected on the basis that the photographs were irrelevant and grossly prejudicial. Contrary to appellant's assertion, however, the photographs, which showed appellant apparently enjoying his California trip, were relevant to rebut appellant's testimony that the shooting was an accident and that he was worried about the shooting.

■ Appellant also contends that defense counsel failed to object to the impeachment of witness Martin Jiunta. At trial, Jiunta maintained that in a conversation which occurred before the shooting, appellant said that he was not interested in a .22 caliber weapon. Jiunta testified that appellant did not give any reason as to his lack of interest. A police officer then testified about a prior statement Jiunta had made to him in which, according to Jiunta, appellant said he was not interested in a .22 caliber weapon because it was not large enough and because a person would have to shoot someone with a .22 more than once. Since this statement was inconsistent with Jiunta's testimony at trial, it qualified as a prior inconsistent statement. *See* Rule 801(d)(1), Arizona Rules of Evidence.

Appellant asserts, however, that defense counsel should have objected to this testimony because it was inadmissible under *State v. Cruz*, 128 Ariz. 538, 627 P.2d 689 (1981). In *Cruz*, the Arizona Supreme Court noted that prior inconsistent statements are admissible under the hearsay rules. However, the court stated that if a statement contains a dual purpose of casting doubt on a witness's credibility and proving a defendant's guilt, and the statement is prejudicial, it should not be admitted. *Id.* at 540, 627 P.2d at 691. Jiunta's statement arguably violated the first prong of *Cruz* because it showed evidence of premeditation which could prove guilt for first-degree murder. The statement may also have facilitated the jury's determina-

tion that the defendant committed intentional but unpremeditated murder rather than reckless manslaughter or an act of self-defense. Because we cannot determine from the record that this claim of ineffective assistance is meritless, we cannot consider it on appeal, but leave it to be developed in a Rule 32 proceeding. *State v. Carver, supra.*

■ Appellant also contends that defense counsel failed to object to the admission in evidence of a 9 mm. handgun. The state established that the handgun was identical to the gun appellant used to shoot Weitzel. Appellant asserts that the gun introduced in evidence was not relevant to any issue in the case. We disagree. The state's ballistics expert and the person who sold the handgun to appellant testified that such a gun operates only in double-action mode and has a particularly heavy trigger pull. This testimony indicates that it was highly unlikely that such a weapon would have accidentally fired four times. Such testimony is relevant to the state's theory that the shooting was intentional and also rebuts defendant's claim that it was accidental.

■ Finally, appellant argues that defense counsel failed to object properly to the admission in evidence of live ammunition. Defense counsel objected on the basis of relevancy; appellant argues that the proper objection was lack of foundation. Appellant is incorrect. The unspent ammunition had little probative value to the central issues in the case, and therefore defense counsel's objection was proper. In any case, admission of the ammunition did not prejudice the appellant in view of his admission that he shot the victim.

## 2. Defense Counsel's Lack of Familiarity with the Motion for Judgment of Acquittal

Appellant claims that he was denied effective assistance of counsel due to defense counsel's unfamiliarity with Arizona law. At the close of the state's case, defense counsel, a member of the State Bar of Missouri, and not a member of the State Bar of Arizona, asked the trial judge to confirm his understanding that he could then bring a motion for judgment of acquittal. The trial judge indicated that counsel's understanding of the rule was correct. The motion was made and denied.

■ Appellant fails to show how such conduct was ineffective. Defense counsel inquired when he had questions as to Arizona procedure and made the appropriate motion at the appropriate time. No ineffective assistance of counsel lies in such candid inquiries to the court.

## 3. Defense Counsel's Failure to Object to Prosecutor's Closing Arguments

During closing arguments, the prosecutor made comments about the prevalence of violence and crime in society. Appellant claims that by these statements the prosecution argued facts not in evidence. Appellant maintains that he received ineffective assistance of counsel because defense counsel failed to object to these statements.

■ Attorneys are given wide latitude in their jury arguments. *State v. Zaragoza,* 135 Ariz. 63, 68, 659 P.2d 22, 27 (1983), *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983). Arguments referring to the prevalence of crime, the duty of the jury, and the efforts of the police in combatting crime are not improper. *State v. Sullivan,* 130 Ariz. 213, 219, 635 P.2d 501, 507 (1981); *State v. Williams,* 107 Ariz. 262, 264, 485 P.2d 832, 834 (1971). The Arizona Supreme Court has stated:

> ... in the closing argument excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.

*State v. Gonzales,* 105 Ariz. 434, 437, 466 P.2d 388, 391 (1970). Thus, any objection by defense counsel would have been overruled.

■ In any event, counsel's failure to object appears to be a matter of trial tactics. He did object to other portions of the prosecutor's arguments, suggesting a tacti-

cal decision not to object here. He also made tactical use of the prosecutor's characterization of the world as violent by agreeing with the prosecutor's statements and attempting to color them as factors favoring appellant.

### 4. Defense Counsel's Failure to Appear at Sentencing Hearing

■ Appellant next claims that he received ineffective assistance of counsel at the sentencing hearing. Appellant's lead trial counsel did not appear at sentencing. In his place appeared another attorney, Charles Atwell of Kansas City, Missouri. During his remarks, Mr. Atwell noted that this was his first appearance in an Arizona court and referred to his unfamiliarity with Arizona law. Counsel's reference to his inexperience came at the end of a lengthy and well-versed argument as to why the appellant should receive a mitigated sentence. In his argument, counsel noted that it would be unfair to use elements of the crime as aggravating factors and that the appellant's youth and immaturity were mitigating factors. Counsel also showed familiarity with the pre-sentence recommendation and sought to diminish its unfavorable details.

While appellant is entitled to an attorney who is more than a neutral observer at sentencing, *State v. Carriger,* 132 Ariz. 301, 304, 645 P.2d 816, 819 (1982), appellant is not entitled to any particular attorney. *State v. Hein,* 138 Ariz. 360, 369, 674 P.2d 1358, 1367 (1983). Employment of one member of a law firm is employment of all attorneys in the firm. The client does not have the right to demand that any particular member of the firm conduct the litigation. *Id.* at 370, 674 P.2d at 1368.[2]

In summary, on this record, we find that defense counsel's actions during trial were not unreasonable under prevailing professional norms, nor would the result of the proceedings have changed if counsel had acted as appellant now wishes he had. Appellant's ineffective assistance of counsel

claim fails both parts of the two prong test of *State v. Nash, supra.*

### B. ABUSE OF DISCRETION BY FAILING TO LIMIT INTRODUCTION OF INADMISSIBLE EVIDENCE

Appellant contends that the trial judge generally erred in admitting the evidence that is the subject of appellant's ineffective assistance of counsel claim. As part A of this decision notes, each item of evidence was either admissible or not prejudicial to appellant. Therefore, appellant's broad claim in this regard fails.

### C. ABUSE OF DISCRETION BY IMPOSING AN AGGRAVATED SENTENCE

At sentencing, the trial judge imposed an aggravated sentence. The aggravating circumstances found by the judge were appellant's disregard for whether the victim lived or died, the suffering of the victim's family, and that appellant premeditated the murder.

■ Appellant first contends that the judge could not utilize evidence of premeditation to support an aggravated sentence when premeditation was "rejected" by the jury's second-degree murder verdict. However, in finding aggravating circumstances, the trial judge may consider all evidence presented at all stages of the trial. *State v. Meador,* 132 Ariz. 343, 346, 645 P.2d 1257, 1260 (App.1982). Given the differences between the jury's function at trial and the judge's function at sentencing, the jury's verdict does not require a sentencing judge to ignore sentencing factors supported by evidence at trial. *Id.* An appellate court is hesitant to interfere with a trial court's discretion in sentencing as long as there is reasonable evidence in the record to substantiate its finding of aggravating circumstances. *Id.* at 348, 645 P.2d at 1262. Even though the jury verdict rejected the first-degree murder option, there is evidence in the record to support the trial judge's finding of some premedita-

---

**2.** According to Martindale–Hubbell's 1989 Law Directory, Mr. Wyrsch and Mr. Atwell are part-

ners at the firm of Koenigdorf, Wyrsch and Ramsey of Kansas City, Missouri.

tion, and this may be considered an aggravating factor pursuant to A.R.S. § 13–702(D)(13).

Appellant also claims that the other aggravating factors found by the judge—a disregard for life, leaving the scene, and leaving the victim to die—are elements defining the offense and therefore cannot be separately taken into account for sentencing purposes. To the contrary, none of these items is an element of second-degree murder under A.R.S. § 13–1104. Leaving the scene and leaving the victim to die are unnecessary to complete the elements of second-degree murder. The finding as to appellant's disregard for life refers to appellant's callous departure to California after the shooting. *See Meador, supra,* (using, as an aggravating circumstance, the fact that the defendant did not seek assistance for the helpless victim but instead, abandoned him to die).

Appellant also claims that the trial court's consideration of the impact of the crime to the victim's family ("victim impact statement") as an aggravating circumstance pursuant to A.R.S. § 13–702(D)(9) violates *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). *Booth* held only that the Eighth Amendment prohibits a jury from considering victim impact statements in the sentencing phase of a capital murder case. The Court stated that it implied no opinion as to the use of victim impact statements in non-capital cases. *Id.* at 509 n. 12, 107 S.Ct. at 2536, n. 12, 96 L.Ed.2d at 452 n. 12. Furthermore, the Arizona Supreme Court has recently held that *Booth* does not apply even in a capital case when a trial court (as opposed to a jury) imposes sentence upon a defendant. *State v. Beaty,* 158 Ariz. 232, 244, 762 P.2d 519, 531 (1988). That court reasoned that, unlike a jury, a judge is presumed able to focus on the relevant sentencing factors and to set aside irrelevant, inflammatory, and emotional facts. Thus, because in the instant case a judge rather than a jury imposed sentence and also because this was not a capital case, the concerns expressed in *Booth* do not apply.

Appellant next claims as error that the trial judge ignored appellant's lack of a criminal history as a mitigating factor. The consideration of mitigating circumstances is solely within the discretion of the court. *State v. Bly,* 127 Ariz. 370, 372, 621 P.2d 279, 281 (1980). A sentencing judge is not required to consider a defendant's lack of a prior criminal record as a mitigating factor. Rather, it is only one of the many traditional mitigating circumstances a judge *may* consider in determining punishment under the "catch-all" provision of § 13–702(E)(5). *State v. Thurlow,* 148 Ariz. 16, 20, 712 P.2d 929, 933 (1986). Thus, it was not error for the trial judge to ignore defendant's lack of a criminal record as a mitigating circumstance.

Appellant finally contends that the sentence should be reduced because it is excessive. A sentence within the statutory limits will not be modified, however, unless the trial court is arbitrary, capricious, or fails to conduct an adequate investigation of the facts. *State v. Fatty,* 150 Ariz. 587, 592, 724 P.2d 1256, 1261 (App.1986). In this case, the sentence is within the sentencing limits provided by A.R.S. §§ 13–710 and –702. In addition, the court stated the aggravating factors upon which it relied and fully considered all of the stated factors. No arbitrary, capricious or unsupported factors appear in the sentence.

## D. SELF–DEFENSE INSTRUCTION

Appellant contends that the trial court improperly instructed the jurors on the issue of self-defense. Specifically, appellant maintains that the trial court committed fundamental error by impermissibly shifting the burden of proof from the state to appellant. Appellant's contention on this score is incorrect.

In *State v. Hunter,* 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984), the Arizona Supreme Court held that it was fundamental error to fail to instruct the jury (a) that a defendant only needs to present evidence sufficient to raise a reasonable doubt about whether he acted in self-defense, and (b) once defendant presents such evidence, the burden

shifts to the state to prove beyond a reasonable doubt that the conduct was not justified. *See also Everett v. State,* 88 Ariz. 293, 297, 356 P.2d 394, 398 (1960). The *Hunter* court noted the importance of correctly informing the jury about this burden of proof:

> "The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof." *Lakeside v. Oregon,* 435 U.S. 333, 340, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978). It is vital that the jury not misunderstand the concept of the defendant's burden of proof on self-defense; the jury must be instructed with great care to prevent the misunderstanding of this concept.

*Hunter* 142 Ariz. at 90, 688 P.2d at 982, *quoting State v. Denny,* 119 Ariz. 131, 134, 579 P.2d 1101, 1104 (1978). *Hunter* sought to avoid the risk of jury confusion with respect to the burden of proof. The court determined that a general instruction providing that the state must prove all of its case against the defendant and must prove the defendant guilty beyond a reasonable doubt, coupled with an instruction given several pages later which provided "[i]f you find the defendant's conduct justified, you must find the defendant not guilty," did not make clear to the jury the shifting nature of the burden of proof. *Id.*

The *Hunter* ruling was subsequently applied in *State v. Cannon,* 157 Ariz. 107, 755 P.2d 412 (1988). In that case, the jury was instructed (a) on the elements of self-defense, and (b) that the prosecution must prove all of its case beyond a reasonable doubt. The *Cannon* court noted that unlike *Hunter,* the instructions given did not state "[i]f you find the defendant's conduct justified, you must find the defendant not guilty." The court held that these instructions did not create a risk of jury confusion and therefore did not violate *Hunter.*

 The jury in the present case was adequately instructed as to the burden of proof regarding self-defense. The trial court instructed the jury that the state must prove every element of the offense beyond a reasonable doubt. The elements of a self-defense claim were clearly delineated. The jury was specifically instructed:

> When some evidence of self-defense is offered by the defendant, the prosecution must then prove beyond a reasonable doubt that the defendant did not act in self-defense.

> The defendant does not have the burden to prove that he acted in self-defense.

It is true that the court included the statement "[i]f you decide that the defendant's conduct was justified, you must find the defendant not guilty." Appellant, citing *Hunter,* asserts that inclusion of this statement automatically constitutes fundamental error. Appellant misreads *Hunter.* As we noted above, *Hunter* was concerned solely with the risk of jury confusion:

> In the present case the instructions did not carefully instruct the jury such that it would not misunderstand. The instructions did not make it clear that appellant's burden as to self-defense was limited to raising a reasonable doubt and that the burden on the state was then to disprove beyond a reasonable doubt that appellant acted in self-defense. Rather, because the instructions provided that the state must prove all of its case against the defendant and must prove the defendant guilty beyond a reasonable doubt, and *then several pages later* provided that "[i]f you find the defendant's conduct justified, you must find the defendant not guilty," the jury might have approached the situation in one or more of three ways: it might have thought, as the state asserts, that the "beyond a reasonable doubt" instruction applied to all issues, including the self-defense issue. It might also have thought, however, that the self-defense instruction seemed to place on appellant the burden of proving self-defense and that therefore the specific instruction concerning self-defense was an exception to the general beyond-a-reasonable-doubt instruction. Or the jury might have thought that the beyond-a-reasonable-doubt instruction applied only to the state's "case

against the defendant" and that the wording of the self-defense issue was simply not part of the state's case that the state had to prove.

(emphasis added.)

The concerns of the *Hunter* court do not apply here. This jury was specifically informed as to the general burden of proof requirement as well as the shifting burden of proof regarding self-defense. The jury was told that the state's burden of proof regarding a self-defense claim consisted of disproving beyond a reasonable doubt that the defendant did not act in self-defense (once defendant raised some evidence of self-defense). The jury was told that "[t]he defendant does not have the burden to prove that he acted in self-defense." These instructions informed the jury of the proper burden of proof. It is difficult to see how this jury could have thought that the self-defense instruction placed on appellant the burden of proving self-defense. The first concern of the *Hunter* court does not apply.

*Hunter*'s second concern is that the jury might have thought that the beyond a reasonable doubt standard applied only to the state's "case against the defendant" and not to defenses raised by defendant. In our case, the jury was instructed in clear language that the reasonable doubt standard applied to the self-defense issue: "When some evidence of self-defense is offered by the defendant, the prosecution must then prove beyond a reasonable doubt that the defendant did not act in self-defense." Thus, the second concern noted in *Hunter* does not apply to the case at hand.

Contrary to the dissent's suggestion, the *Hunter* court did not say that inclusion of the sentence "if you find the defendant's conduct justified, you must find the defendant not guilty" automatically constitutes fundamental error. Rather, the *Hunter* court said that fundamental error occurs when that sentence is included in instructions that do not make clear to the jury the shifting burden of proof regarding self-defense. We do not encourage the use of instructions which contain the sentence in question: "if you find the defendant's con-

duct justified, you must find the defendant not guilty." However, challenged instructions must always be read in the context of the entire collection of instructions. *State v. Platt*, 130 Ariz. 570, 575, 637 P.2d 1073, 1078 (App.1981). Read together, the instructions were not ambiguous nor did they provide any reason for the jury to misunderstand the burden of proof requirements.

## E. JURY COERCION

Finally, appellant asserts that the trial court committed reversible error by not discharging the jury after receiving notice of possible deadlock, thereby coercing the jurors into reaching a verdict.

■ The guidelines for determining when a judge may discharge a jury are set forth in Rule 22.4(b) of the Arizona Rules of Criminal Procedure:

The court shall discharge the jurors when ...

(b) Upon expiration of such time as the court deems proper, it appears that there is no reasonable probability that the jurors can agree upon a verdict ...

A decision on whether to discharge a jury on the ground that there exists no reasonable probability that the jurors can agree on a verdict is within the sound discretion of the trial court. *State v. Villafuerte*, 142 Ariz. 323, 330, 690 P.2d 42, 49 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1234, 84 L.Ed.2d 371 (1985); *State v. Moore*, 108 Ariz. 532, 535, 502 P.2d 1351 (1972), *cert. denied*, 412 U.S. 906, 93 S.Ct. 2292, 36 L.Ed.2d 971 (1973). The test of coerciveness is whether the trial court's actions, viewed in the totality of the circumstances, displaced the independent judgment of the jurors. *State v. McCutcheon*, 150 Ariz. 317, 320, 723 P.2d 666, 669 (1986).

■ Here, we find that the trial judge did not coerce the jury into reaching a verdict. After a two week trial, the jury submitted a note to the judge on the second day of deliberations stating that they could not reach unanimous agreement. The trial judge had the jurors recess for the weekend and resume deliberations that next Tuesday. On the third day of delibera-

tions, the jury again relayed to the judge that they could not reach a verdict. While the court attempted to contact defense counsel, the jury on its own initiative informed the court that it would continue deliberations. Soon after, the jury reached a verdict.

■ Merely advising a deadlocked jury to continue deliberations does not, standing alone, constitute coercion or improper conduct on the part of the trial court. *See State v. Campbell*, 146 Ariz. 415, 418, 706 P.2d 741, 744 (App.1985) (no mistrial when jurors twice advised trial court that they were deadlocked and were advised to continue their deliberations). The trial court did not instruct the jurors that they had to reach a verdict, or indicate to the jurors that they abandon their conscientious convictions in order to reach agreement. *See State v. McCutcheon*, 150 Ariz. 317, 320, 723 P.2d 666 (1986) (trial court's repeated inquiry of whether jurors could reach a verdict on one count against one defendant, when the trial court knew they were split ten to two in favor of conviction found to be coercive).

Under the totality of the circumstances, the trial court did not coerce the jurors into reaching a unanimous verdict.

For the foregoing reasons, the conviction and sentence are affirmed.

GRANT, C.J., concurs.

FIDEL, Judge, dissenting:

The trial court erroneously instructed the jury, "If you decide that the defendant's conduct was justified, you must find the defendant not guilty."

Though this language comes from a once recommended Arizona jury instruction, it was unequivocally repudiated five years ago in *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984), and it is unacceptable to find it still in use today. As our supreme court made clear in *Hunter*, the jury need not "decide [that] the defendant's conduct was justified"—it need only find reasonable doubt whether the conduct was justified—in order to find the defendant not guilty. *Id.* at 89, 688 P.2d at 981. The

instruction misstates the burden to the state's advantage and the defendant's harm.

My colleagues acknowledge *Hunter*, but evade it. The fault there, they suggest, lay in the instructions as a whole and not in the precise statement, "If you decide the defendant's conduct was justified, you must find the defendant not guilty." The supreme court, however, has said otherwise. In *State v. Cannon*, 157 Ariz. 107, 755 P.2d 412 (1988), it described this very statement as "[t]he language ... that *Hunter* found objectionable...." *Id.* at 107, 755 P.2d at 412. Its fault, *Cannon* added, was to create "the risk that the jury would believe that the accused had the burden to prove justification." *Id.*

The majority finds this risk acceptably diminished in this case by the juxtaposition of the statement, "[t]he defendant does not have the burden to prove that he acted in self-defense." I disagree. While this latter statement is certainly correct, its juxtaposition with a contrary proposition fails to cure the harm. At best, it creates confusion. Though the court tells the jury in one breath that the defendant has no burden to prove justification, it suggests in the next that the jury must find justification in order to acquit. This is not an area where a half-right instruction will do.

The supreme court said in *Hunter*: "It is vital that the jury not misunderstand the concept of the defendant's burden of proof on self-defense; the jury must be instructed with great care to prevent the misunderstanding of this concept." 142 Ariz. at 90, 688 P.2d at 982, *quoting State v. Denny*, 119 Ariz. 131, 134, 579 P.2d 1101, 1104 (1978). A jury is not "instructed with great care to prevent ... misunderstanding" when it is instructed in internally contradictory terms:

It is the duty of the court to give the jury the rules of law to guide their deliberations and determinations, and these rules must not be at such cross purposes as to confuse and mislead the jury. If the instructions are contradictory upon the main point in question, how is the

jury to know which to follow, or which is a correct statement of the law?

*State v. King,* 158 Ariz. 419, 425–26, 763 P.2d 239, 245–46 (1988), *quoting Hurley v. State,* 22 Ariz. 211, 222, 196 P. 159, 163 (1921).

One cannot know what portion of a set of instructions might be seized on in the jury room to resolve a point of contention among the jurors. For this reason among others, "Ordinarily, errors in jury instructions defining a party's burden of proof are considered fundamental." *King,* 158 Ariz. at 424, 763 P.2d at 244. In my opinion, fundamental error was committed in this case, confusing the burden of proof on the critical issue of self-defense. I would reverse.