NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTHONY CHARLES HALL, *Appellant.*

No. 1 CA-CR 22-0181
FILED 3-30-2023

Appeal from the Superior Court in Mohave County
No. S8015CR202100382
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Kathryn A. Damstra
*Counsel for Appellee*

Jill L. Evans, Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge David D. Weinzweig joined.

**C A M P B E L L**, Judge:

**¶1**      Anthony Charles Hall appeals his sentences for manslaughter by domestic violence and theft of means of transportation. He claims the superior court failed to properly consider mitigating evidence before meting out his sentences. For the following reasons, we affirm.

### BACKGROUND[1]

**¶2**      Shortly after meeting, the victim invited a homeless Hall to move into a two-bedroom house he shared with a family friend (the roommate). Hall accepted the invitation. Approximately three months after Hall moved in, the roommate moved out.

**¶3**      A few weeks later, the roommate returned to the victim's home to collect her mail and check on the victim. When she approached the front door, she noticed broken glass on the ground. Concerned, she walked around the house and entered through a back door. Once she stepped inside, the roommate saw blood on a nearby washing machine and noticed a blanket covering what appeared to be a body in the living room. The roommate immediately "backed out" of the house and called the police.

**¶4**      When responding officers arrived at the scene, they conducted a protective sweep of the residence and found the deceased victim wrapped in a blanket and blood throughout the house. During the ensuing investigation, law enforcement personnel collected finger and hand prints, blood samples, and surveillance camera footage from the victim's home.

**¶5**      Reviewing the camera footage, officers observed that only Hall and the victim entered the residence during the three days before the

---

[1]      We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

discovery of the victim's body. Thereafter, only Hall left the house, driving away in the victim's car.

¶6            By "pinging" his cellular phone, law enforcement officers located Hall in Texas. In coordination with local officers, Texas authorities apprehended Hall and took possession of the victim's vehicle. At the time of his arrest, Hall had multiple hand injuries, knee abrasions, and a black eye. When the officers took possession of the victim's car, the vehicle's Arizona license plate was missing and a California license plate was attached.

¶7            An autopsy revealed the victim sustained cuts and bruises to his face, a broken nose, displaced teeth, torn lips, bite marks on his back, cuts to his hands, eye hemorrhaging, and neck and scalp injuries. The medical examiner concluded that the victim died from numerous injuries, including blunt force trauma and ligature strangulation.

¶8            After comparing Hall's DNA profile and exemplar prints to evidence collected from the victim's home, law enforcement confirmed Hall's blood at the scene, along with his bloody palm print on the victim's washing machine. Hall's social media account revealed an acrimonious relationship between Hall and the victim. In their social media posts, the victim accused Hall of physical assault and Hall accused the victim of physical and sexual assault.

¶9            The State charged Hall with one count of second-degree murder by domestic violence and one count of theft of means of transportation. The State also alleged aggravating circumstances and that Hall had three prior felony convictions.

¶10            At trial, Hall testified that soon after he moved in, the victim began making unwanted sexual advances. Hall recounted that he initially rebuffed the victim's advances, but the victim responded violently, so Hall "submit[ted]" to maintain "peace." According to Hall, the victim assaulted him the day he left the residence and took the victim's car. But Hall denied killing the victim and maintained that the victim was alive the last time he saw him. On cross-examination, Hall admitted switching the car's license plate, but testified that he "full[y] inten[ded]" to return the victim's car.

¶11            After the presentation of evidence, the superior court granted defense counsel's request to include a manslaughter by sudden quarrel instruction in the final jury instructions. The jury found Hall guilty of the lesser-included offense of manslaughter by domestic violence and theft of means of transportation. The jury also found two aggravating factors

related to the manslaughter count (dangerous offense and harm to the victim or the victim's immediate family). At sentencing, based on Hall's testimonial admission, the superior court found that Hall had been convicted of a prior felony, and sentenced him to an aggravated term of 20 years' imprisonment for the count of manslaughter and a consecutive, presumptive term of 6.5 years' imprisonment for the count of theft of means of transportation. Hall timely appealed.

## DISCUSSION

¶12        Hall challenges the sentences imposed for both counts. He contends the superior court failed to consider mitigation evidence of impaired capacity before sentencing him to presumptive and aggravated sentences.

¶13        The superior court "has broad discretion to determine the appropriate penalty to impose upon conviction." *State v. Cazares*, 205 Ariz. 425, 427, ¶ 6 (App. 2003). When a sentence falls within statutory limits, we will uphold it unless the superior court acted arbitrarily or capriciously or failed to conduct an adequate investigation into the facts relevant to sentencing. *Id.*; *State v. Fillmore*, 187 Ariz. 174, 184 (App. 1996). While the superior court must consider relevant evidence offered in mitigation, it "is not obligated to find mitigating factors just because evidence is presented." *State v. Carbajal*, 177 Ariz. 461, 463 (App. 1994); *State v. Webb*, 164 Ariz. 348, 355 (App. 1990) ("The consideration of mitigating circumstances is solely within the discretion of the court."). The superior court "is in the best position to determine the evidence surrounding the aggravating and mitigating factors[,]" including "which factors should be given credence," *Carbajal*, 177 Ariz. at 463, and "the weight to be given that evidence," *State v. Gonzales*, 181 Ariz. 502, 515 (1995).

¶14        After the jury rendered its verdicts, the superior court granted Hall's requests to appoint a mental health expert and order a mental examination and evaluation. Before sentencing, defense counsel submitted the evaluation as mitigating evidence. In her report, the evaluator noted that Hall was an "unreliable historian," gave conflicting statements, and had "significant memory problems." The evaluator recounted Hall's claims that the victim sexually assaulted him and engaged in controlling behaviors. Ultimately, the evaluator opined that she was unable to diagnose Hall with post-traumatic stress disorder or any other condition but "recognize[d]" that he "potential[ly]" endured "physical and psychological trauma."

¶15      At the sentencing hearing, the superior court expressly stated that it had considered the mitigation and aggravation evidence presented and the entire record. Having both heard directly from the victim's family members and observed them at trial, the superior court found the harm Hall inflicted on the family "a significant aggravating circumstance." While acknowledging that impaired mental health can be a mitigating factor, the superior court noted that the evaluator did not diagnose Hall with *any* condition and emphasized that the evidence Hall suffered trauma was primarily self-reported.[2] Given these considerations, the superior court found that "any mental health challenge[]" Hall experienced did not "deserve[] much, if any, weight" as a mitigating factor. With respect to Hall's specific claim that the victim had committed "atrocities" against him, the superior court stated: "[I]f that is something that the jury believed, then that would have been taken into account when the jury found the defendant guilty of the manslaughter offense rather than . . . the second degree murder offense. At any rate, I don't find that it warrants any -- that it is a mitigating circumstance in any way. I find that the aggravating circumstance controls in this matter."

¶16      Contrary to Hall's contention, the record reflects that the superior court thoroughly considered the mitigation evidence, found it unavailing, and determined the jury's verdict for the lesser-included offense accounted for any provocation from the victim. Having carefully reviewed the mitigation evidence, the superior court "was required to do no more." *Gonzales*, 181 Ariz. at 515. Put simply, the superior court acted within its discretion by evaluating the evidence, finding it did not mitigate the offenses for which Hall was convicted, and balancing in favor of presumptive and aggravated sentences.

---

[2]      Pointing to the superior court's observation that his claim of impairment conflicted with his trial testimony, Hall asserts the superior court arbitrarily dismissed his mitigation evidence because he denied killing the victim at trial. Although the superior court made a cursory reference to the claim of impairment being incompatible with Hall's trial defense, read in context, it is clear the superior court rejected Hall's claim—that he was unable to appreciate the wrongfulness of his conduct—first and foremost because the mental health evaluator did not diagnose him with any impairing condition and the mitigation evidence essentially consisted of "statements that were made by the defendant himself."

## CONCLUSION

¶17        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA