730 P.2d 825

STATE of Arizona, Appellee,

v.

James Clifford FISHER, Appellant.

No. CR 86–0073–PC.

Supreme Court of Arizona.

En Banc.

Dec. 31, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gary A. Fadell, Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

CAMERON, Justice.

### I. *Jurisdiction*

Defendant, James C. Fisher, was convicted of first-degree murder of a seventy-three-year-old woman, Marguerite Bailey, A.R.S. § 13–1105, and was sentenced to death. Defendant's conviction and sentence were affirmed on appeal. *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750, *cert. denied*, 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). Defendant sought post-conviction relief. He petitions this court for review of the denial of his request for post-conviction relief. *See* 17 A.R.S. Rules of Crim.Proc., Rule 32. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), A.R.S. § 13–4031 and 17 A.R.S. Rules of Crim.Proc., Rule 32.9.

### II. *Issues*

We must answer the following issues:

1) Was counsel's performance at trial ineffective?
2) Was counsel's performance at the motion for new trial ineffective?

### III. *Facts and Procedural Background*

At the time of the homicide, defendant and his wife, Ann, lived in and managed a Phoenix apartment complex owned by the victim, Marguerite Bailey. Bailey's body

was discovered in an alley early Sunday morning, 13 September 1981. Pursuing their investigation, the police entered the defendant's abandoned apartment where they discovered evidence of the murder.

Both defendant and Ann were arrested on 17 September 1981, at defendant's mother's home in Davenport, Iowa. As the result of police interrogation, Ann made a statement inculpating defendant in Bailey's murder. Once the police confronted defendant with Ann's statement, he confessed to the murder, reiterating Ann's earlier statements.

At trial, defendant's main defense was that his wife, Ann, was the guilty party and that he had confessed to protect her. He took the stand on his own behalf and so testified. A subsidiary defense was that he was so drunk that he blacked out the afternoon of the murder and did not know what happened.

Ann, in the meantime, entered into a plea agreement covering her potential liability for this homicide/robbery. The agreement permitted her to plead guilty to hindering prosecution, a class 5 felony, if certain conditions were met. One condition provided that " 'if she is called as a witness in the trial of James Fisher and required to testify, her testimony will not vary substantially in relevant areas to statements previously given * * *.' " *State v. Fisher*, 141 Ariz. at 244, 686 P.2d at 767 (1984).

Efforts at defendant's trial to obtain the testimony of Ann were unsuccessful as she followed her counsel's advice to claim her fifth amendment privilege and refused to testify about the murder. The defense unsuccessfully attempted to introduce letters written by Ann to defendant while he was in jail which declared his innocence. Subsequent to Ann's appearance, the trial judge reversed his earlier ruling and admitted Ann's plea agreement into evidence. Once the agreement was admitted into evidence, Ann was not recalled as a witness. The jury found defendant guilty.

After defendant's trial but before sentencing, Ann pled guilty to hindering prosecution and received a sentence of 2.5 years.

Shortly thereafter, she contacted defendant's attorney, Thornton W. Price III, and confessed that she, rather than defendant, had killed Bailey. Arguing that a transcript of Ann's confession and her sworn affidavit were newly discovered evidence, Price moved for a new trial.

At the hearing on the motion for new trial, Price did not have Ann testify nor did he introduce any additional written materials from Ann at that time. Neither did he call Betty Fisher, defendant's former wife, although her testimony would have indicated that Ann's confession was consistent with prior statements. The trial court denied the motion for new trial, holding that the evidence was not newly discovered and was not credible.

At sentencing, the trial judge found two aggravating circumstances: 1) that defendant killed Bailey in expectation of receipt of something of pecuniary value, A.R.S. § 13–703(F)(5); and 2) that Bailey was killed in an especially heinous and depraved manner, A.R.S. § 13–703(F)(6). The court found no mitigating circumstances sufficiently substantial to call for leniency and imposed the death penalty.

On appeal, this court affirmed the conviction and sentence, *State v. Fisher*, 141 Ariz. at 253, 686 P.2d at 776, and denied a motion for reconsideration.

Six months later, Fisher filed a *propria persona* petition for post-conviction relief pursuant to Rule 32 in Maricopa County Superior Court claiming, among other things, ineffective assistance of counsel. At the Rule 32 hearing, defendant and his former trial counsel, Price, testified in person.

## IV. *Ineffective Assistance of Counsel at Trial*

In support of his claim of ineffective assistance of counsel at trial, defendant testified that he had wanted to take a polygraph test, even though he knew it was inadmissible, but Price had refused. Additionally, defendant claimed that a handwriting analysis should have been done on the map found in his apartment

showing the location where the victim's car was found; also, the map should have been dusted and sprayed for prints. Defendant recalled asking Price to obtain a crime-scene reconstruction expert to show that the hammer blows to Bailey's head were struck by a right-handed person, such as Ann. Defendant is left-handed.

Defendant also testified that his lawyer was aware of his earlier mental problems, his possible temporal lobe epilepsy, and alcohol problems, yet did not utilize this evidence at the sentencing phase of the case. Defendant accused Price of failing to follow up on evidence of Ann's mental problems and propensities for violence.

Price, a certified criminal law specialist, testified at length as to his strategy in the case; he and defendant had discussed that strategy extensively. Price had no recollection of the polygraph issue, but would not have recommended it in any event. Concerning the handwriting and fingerprints on the map, Price felt that an analysis would not have proven anything and, that since the state had not offered any fingerprint evidence, he preferred not to stir up possible trouble.

Price saved the right-handed vs. left-handed theory for his closing argument, thinking he could argue persuasively from the location of the furniture and blood stains at the murder scene and from the placement of the blows to Bailey's head. Furthermore, to his knowledge, the state had not pursued this theory. Price believed that asking the court for funds for a crime-scene reconstruction would have required an explanation of the theory, thereby losing the element of surprise. Plus, experts might have proven the theory wrong. Price admitted that he had not thought of the theory until after the start of the trial, although perhaps he could have obtained a continuance. Additionally, Price admitted that he was not aware that he could have obtained funds *ex parte* to hire a crime-scene reconstruction expert or to have a polygraph test done.

Price acknowledged that he and defendant had discussed extensively Fisher's mental problems, including the alcoholism and temporal lobe epilepsy. Price was fully aware of defendant's hospitalizations and medical care. He obtained the records and provided them to two local psychiatrists. The information was made available to the jury through psychiatric testimony and defendant's own testimony. There never was any firm medical diagnosis of temporal lobe epilepsy that could have been presented.

To determine whether trial counsel was ineffective, a two-pronged test is applied: 1) was counsel's performance deficient? *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); and 2) was defendant prejudiced by his attorney's deficient performance? *State v. Lee,* 142 Ariz. 210, 213–14, 689 P.2d 153, 156–57 (1984). This test complies with the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The first prong requires the defendant to specify the acts or omissions of counsel that allegedly constitute ineffective assistance. The evidence must overcome a presumption that the challenged action was sound trial strategy under the circumstances. *Id.* at 689, 104 S.Ct. at 2066, 80 L.Ed.2d at 694–95. After examining all the circumstances existing at the time of counsel's actions, we will find deficient representation only where counsel's performance falls below objective standards of reasonable representation measured by prevailing professional norms. *Nash,* 143 Ariz. at 397, 694 P.2d at 227, *citing Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 693.

We disagree with defendant's contention that counsel's performance at trial was deficient. The defense strategy, developed by Price and defendant together, of portraying Ann as the guilty party was difficult given Ann's posture in the case and defendant's earlier confession. Nevertheless, Price acted reasonably in presenting the defense: eliciting testimony on Ann's violent character, defendant's state of ine-

briation, and the location of furniture and blood stains at the murder scene. Price tried to confront Ann with her plea agreement, hoping to persuade the jury that her refusal to testify was motivated by fear of losing the agreement's benefits. Furthermore, in his closing argument, Price argued the defense of Ann's guilt to the jury. Price's performance at trial as measured by prevailing professional norms did not fall below objective standards of reasonable representation. We hold that counsel's representation at trial was not ineffective.

## V. *Ineffective Assistance of Counsel at the Motion for New Trial*

A review of the facts and circumstances surrounding counsel's representation of defendant in the motion for new trial reveals, however, specific incidents where counsel failed to properly investigate or utilize vital evidence and testimony.

At the Rule 32 hearing, a transcript prepared from a tape recording of an unsworn interview of Betty Fisher was admitted into evidence. Defendant and Betty were married for fifteen years, but lived together, off and on, for several years after divorcing in 1975. The interview was conducted in Iowa by defendant's current lawyer together with an attorney from the Arizona Attorney General's Office. The interview occurred after the defendant's appeal had been decided by this court.

The interview with Betty painted a picture of Ann as a woman who had a history of violence, who ran around with other men, and who used drugs. After being arrested, defendant had told Betty that he confessed to protect Ann and that Ann had told James that "she had took and hit her [Bailey] in the head with a hammer, and killed her." Betty also related some phone conversations and letters she had received from Ann. In all, Betty received some 20 to 30 telephone calls from Ann. Ann told Betty several stories about the killing, none of them implicating defendant as the killer. According to Betty, one story was that defendant was innocent because he was passed out when a "Roger" came in and murdered Bailey. According to Ann, Roger supposedly lived in the apartments and "had it in" for the landlady. By other accounts, Ann and Roger both were involved. After defendant's conviction and Ann's sentencing, Ann confessed to Betty that she had killed Bailey and gave a detailed description of the murder. Ann reiterated this confession to Betty on several occasions.

Betty also related some conversations with Price about her coming to Phoenix to testify at trial, but that she did not have the money. Price recalled these telephone conversations with Betty. He remembered that they had talked about defendant's alcoholism and Betty's conversations with Ann. Price never sent Betty the money or a ticket as he thought her testimony at trial would be cumulative and unnecessary.

At the hearing on the motion for new trial, Price presented only the unsworn confession of Ann. Ann did not appear as a witness; consequently, the trial judge's questions as to her willingness to testify at a new trial went unanswered. Nor did Betty appear as a witness to testify that Ann's confession was consistent with statements Ann had made to her. Counsel failed to present any proof supporting his argument that Ann's confession was not recanted, and therefore unreliable, testimony.

The sixth amendment guarantees the right to a fair trial by protecting an adversarial process where the accused has counsel acting in the role of an advocate. *Anders v. California,* 386 U.S. 738, 741–42, 87 S.Ct. 1396, 1398–99, 18 L.Ed.2d 493, 496–97 (1967). As an advocate, "[c]ounsel ... has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. "Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, ... 'counsel has a duty to make reasonable investigations or to make a reasonable decision

that makes particular investigations unnecessary.' " *Kimmelman v. Morrison,* — U.S. ——, ——, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305, 325 (1986) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2066, 80 L.Ed.2d at 695).

■ We believe counsel failed in his required duty to use the skill, thoroughness and preparation reasonably necessary by failing to investigate and present necessary evidence at the hearing on the motion for new trial. Failure to do so was unreasonable given the nature of the evidence admitted at trial.

For the second prong of the ineffective counsel test, prejudice to the defendant requires only a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee,* 142 Ariz. at 214, 689 P.2d at 157, *quoting Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. We have defined a "reasonable probability" as "less than 'more likely than not' but more than a mere possibility." *Lee,* 142 Ariz. at 214, 689 P.2d at 157. According to *Strickland,* a "showing that the decision reached would reasonably likely have been different absent the errors," indicates a breakdown in the adversarial process which, consequently, undermines confidence in the outcome. 466 U.S. at 694, 104 S.Ct. at 2068–69, 80 L.Ed.2d at 698.

To determine the probability of prejudice, we must consider the weight of the State's case to determine the importance of the omitted defense evidence. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

The state offered evidence that Bailey was killed in the defendant's apartment. No physical evidence was introduced incriminating defendant more than Ann. No substantial sum of money was discovered on defendant when arrested. The state's strongest evidence was defendant's confession, which merely reiterated everything the police read defendant from Ann's inculpating statements. Ann did not testify at defendant's trial, claiming her fifth amendment privilege, and thereby protecting her plea agreement. The newly discovered evidence would directly contradict the state's evidence.

Counsel failed to interview crucial potential witnesses. Instead, he relied on oral arguments to support his theory of Ann's guilt without any substantive evidence. We recently addressed a similar failure to investigate claim: "When we consider that the defendant does not have to prove his innocence, but only raise a reasonable doubt about his guilt, the evidence which should have been produced becomes even more important." *State v. Tapia,* 151 Ariz. 62, 64, 725 P.2d 1096, 1098 (1986) (counsel failed to interview alibi witnesses).

■ Considering the shortcomings in the state's evidence, it is reasonably probable that presentation of witnesses at the motion-for-new-trial hearing by trial counsel could have resulted in a new trial for defendant. Failure to interview and call the essential witnesses needed to bolster defendant's case prejudiced his case.

After reviewing the circumstances surrounding the representation defendant received at the motion hearing, we conclude that it fell below the required standard and that there is a reasonable probability that defendant's motion for new trial would have been granted if the defendant had received effective assistance of counsel.

We affirm as to the other issues raised by the petition for post-conviction relief. The case is remanded to the superior court for a new hearing on the motion for new trial based on newly discovered evidence.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.