859 P.2d 179

**STATE of Arizona, Appellant,**

v.

**James C. FISHER, Appellee.**

**No. CR–92–0027–T/AP.**

Supreme Court of Arizona, In Division.

Sept. 2, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Galen H. Wilkes, Phoenix, for appellant.

Neal W. Bassett, Phoenix, for appellee.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

Defendant James Fisher was convicted of first degree murder and sentenced to death in 1982. This court affirmed the conviction and sentence in *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750 (1984) (*Fisher I*). Defendant then moved for a new trial based on newly discovered evidence—a confession by defendant's wife, Ann Fisher. The trial court denied this motion. Defendant then filed a petition for post-conviction relief, which the trial court also denied. On review of the post-conviction relief proceedings, this court held that defendant did not receive effective assistance of counsel at the hearing on the motion for a new trial

and ordered that a second hearing be held. *See State v. Fisher*, 152 Ariz. 116, 730 P.2d 825 (1986) (*Fisher II*).

Before the second hearing on the motion for new trial, defendant moved for a change of judge for cause. Over the state's opposition, another Maricopa County judge granted defendant's motion. The case was reassigned to Judge Dann, who presided over the hearing that this court had ordered. After considering the evidence, including Ann Fisher's testimony, Judge Dann ordered a new trial. In doing so, he issued a lengthy order setting forth his views on the newly discovered evidence claim and on the propriety of a portion of a letter of agreement entered into by Ann Fisher, the state, and Judge Marquardt, the first trial judge. That order, the subject of this appeal, is set forth in full as Appendix A to this opinion.

The state, pursuant to A.R.S. § 13–4032(2), appealed the order for new trial. Because of the prior proceedings in this court, we granted the state's unopposed motion to transfer the appeal from the court of appeals to this court. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3); A.R.S. §§ 13–4031 and 13–4032(2).

## FACTS

Defendant James Fisher and his wife, Ann Fisher, managed an apartment complex owned by the victim, whose body was found in an alley in Phoenix. During the course of the investigation, detectives went to the apartment complex because a tenant, upon learning that the owner-victim had been murdered, expressed concern for the Fishers' safety. Because of this concern, the police entered the Fishers' apartment. Based on their observations, they obtained a search warrant and seized certain evidence.

A few days later, the Fishers were arrested at a relative's home in Iowa by Iowa and Illinois police officers. Ann Fisher made a statement implicating her husband, the defendant, in the murder. Defendant, after reading Ann's statement, signed a confession. Both Fishers were charged with murder and returned to Arizona. Eventually, Ann Fisher, the state, and the original trial judge, Judge Marquardt, entered into a letter of agreement prepared by Ann's lawyer. The agreement provided that Ann would plead guilty to the reduced charge of hindering prosecution, a class five felony. The agreement was expressly "conditioned upon the termination of the guilt stage" of James Fisher's case and the further condition that if "called as a witness in the trial of James Fisher and required to testify, her testimony w[ould] not vary substantially in relevant areas to statements previously given investigative officers...." This letter of agreement was signed by Ann, her attorney, the prosecutor, and Judge Marquardt, who presided at defendant's trial. The letter of agreement is reproduced as Appendix B to this opinion.

At trial, defendant sought to explain away his confession by claiming that he confessed only to protect Ann. When the defense called Ann, she invoked her Fifth Amendment rights and refused to testify. Ann's letter of agreement was admitted into evidence at defense counsel's request. Defendant was found guilty of first degree murder and sentenced to death.

While defendant's jury was deliberating, the parties proceeded in court with the implementation of the letter of agreement. Judge Marquardt asked Ann about the factual basis for the plea to hindering prosecution. She advised the court that she had "helped transport the body, and I helped him [James] get away." However, the prosecutor requested permission to ask Ann additional questions. In response to those questions and contrary to her earlier statements to the authorities, Ann denied that James had told her in advance that he intended to kill the victim. The prosecutor then stated he was withdrawing his motion to file the plea with the court because there was no factual basis for the plea. This led to a recess, after which, in response to the prosecutor's leading questions, Ann claimed that she had been confused and did not understand his earlier questions. She then answered several more questions.

Consistent with her earlier statement to the authorities (and as required by the letter of agreement) she said that James had told her in advance that he intended to kill the victim. Thereupon, the trial court found a factual basis for Ann's plea, accepted it, and set a sentencing date. Later, Ann was sentenced to 2.5 years with credit for 253 days time served for the class five felony of hindering prosecution.

Although unknown to others at the time, before Ann entered her plea, she told her lawyer that she, not defendant, had killed the victim. Her lawyer disbelieved her, felt she was trying to help her husband, and urged her to enter into the plea agreement, which she did. However, immediately after her sentencing, Ann contacted defendant's attorney and again confessed that she, not defendant, had killed the victim. Based on this confession, defense counsel moved for a new trial. However, at the hearing on the motion, Ann was not subpoenaed and did not testify. Defendant's ex-wife, who had corroborating evidence, also did not testify and was not subpoenaed.

On review of the denial of defendant's motion for new trial, this court held that defendant had not received effective assistance of counsel at the hearing and remanded for a second hearing on the motion. *Fisher II*, 152 Ariz. at 119–20, 730 P.2d at 828–29. As previously noted, there was then a change of judge before the second hearing on the motion for new trial. At that hearing, Ann testified about her conflicting statements made to various people. The trial court received other oral and documentary evidence concerning Ann's conflicting statements over the nine-year period involved. Ultimately, however, she denied being the murderer.

In addition to the facts of the murder itself, Ann testified that defendant was extremely intoxicated the day of the murder and, had she been free to testify truthfully at trial, she would have said defendant was "staggering drunk" that day. She testified that she invoked her Fifth Amendment right at defendant's trial based equally on her attorney's advice and on her desire to preserve the agreement she had with the state. She said her lawyer told her that if she did not "stick to the story," she would lose her agreement and be given a life sentence or be executed. If the letter of agreement had merely required truthful testimony, Ann said she would have testified at trial and "just told it how it was."

The trial court granted defendant's motion for a new trial. Basically, two conclusions led the trial court to this result. First, the provision in the letter of agreement requiring Ann to testify consistently with her prior statements was improper. Second, there was newly discovered evidence available which was not available at trial because of the improper consistency provisions of the letter of agreement. In granting the motion for new trial, the trial court placed a limitation on Ann Fisher's future testimony. While agreeing with the order for new trial, we disagree with the limitation on Ann's future testimony.

## ISSUES

1. Whether the provision in the letter of agreement signed by Ann Fisher, the state, and the original trial judge, which required Ann Fisher to testify consistently with her prior statements to authorities, is enforceable.

2. Whether the trial court abused its discretion in granting a new trial based on newly discovered evidence.

3. Whether the trial court properly sought to exclude statements by Ann Fisher that resulted from the consistency provisions in the letter of agreement.

## DISCUSSION

### I. Validity of Consistency Clause in Ann Fisher's Letter of Agreement

■ The "Letter of Agreement" entered into by the defendant, her attorney, the prosecutor, and the original trial judge, Judge Marquardt, contains the following provision:

（4) The plea agreement is further conditioned on an avowal by [Ann Fisher] that if she is called as a witness in the

trial of James Fisher, and required to testify, her testimony will not vary substantially in relevant areas to the statements previously given to investigative officers of the State of Arizona, and the States of Iowa and Illinois.

■ This court has never expressly determined the validity of such "consistency provisions." At the hearing on the motion for a new trial, Judge Dann found that the agreement violated defendant's due process rights because it "interfer[ed] with the truth-seeking process" and defeated the appearance, if not the actuality, of justice. In *Fisher I*, 141 Ariz. at 244, 686 P.2d at 767, we commented that "the plea agreement here is unusual, if not unethical," but we did not address its validity:

> Though we need not determine the validity of this agreement, we do question its propriety. We recognize the benefits to be gained from granting a defendant immunity in exchange for truthful testimony ... and for granting plea bargains in the interest of judicial economy. The instant case involves more than that. The prosecution did not condition conviction for a lesser offense on a defendant's promise to tell the truth. Instead, the prosecution conditioned conviction for a lesser offense on a defendant's promise to be consistent. By doing so, the prosecution may have overstepped the bounds of the law and its ethical responsibility to "scrupulously avoid any suggestion calculated to induce the witness to suppress or deviate from the truth, or in any degree to affect his free and untrammeled conduct when appearing at the trial or on the witness stand." A.B.A. Canons of Professional Ethics 39. We remind the prosecution that a public prosecutor's duty is "to seek justice, not merely to convict" and that a public prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage his case or aid the accused. A.B.A. Model Code of Professional Responsibility, Ethical Consideration 7–13.

*Id.* at 244 n. 5, 686 P.2d at 767 n. 5. Also, in *State v. Cook*, 170 Ariz. 40, 59, 821 P.2d 731, 750 (1991), again without reaching the merits, we reiterated the inherent "ethical problems" with consistency provisions. Today, we hold that such "consistency provisions" in plea agreements are unenforceable. Plea agreements may, of course, properly be conditioned upon truthful and complete testimony.

In support of our holding of unenforceability, we rely on cases from other jurisdictions and on public policy reasons, In a line of cases beginning with *People v. Medina*, 41 Cal.App.3d 438, 455, 116 Cal.Rptr. 133, 145 (1974), California courts have recognized that "a defendant is denied a fair trial if the prosecution's case depends substantially upon accomplice testimony and the accomplice witness is placed, either by the prosecution or the court, under a strong compulsion to testify in a particular fashion." In *Medina*, the accomplices faced first degree murder charges if their testimony " 'materially or substantially' differed from the prior recorded statement." *Id.* at 452, 116 Cal.Rptr. at 143; *see also People v. Meza*, 116 Cal.App.3d 988, 994, 172 Cal.Rptr. 531, 534 (1981) (improper for a plea agreement to require that "testimony must be confined to a predetermined formulation").

The California Supreme Court has held that "the requirements of due process ... are met if the agreement ... permits the witness to testify freely at trial and to respond to any claim that he breached the agreement by showing that the testimony he gave was a full and truthful account." *People v. Fields*, 35 Cal.3d 329, 197 Cal. Rptr. 803, 823, 673 P.2d 680, 700 (1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 204 (1984); *see also People v. Allen*, 42 Cal.3d 1222, 232 Cal.Rptr. 849, 865, 729 P.2d 115, 131 (1986). Several other states follow California in holding that due process prohibits a plea agreement from conditioning leniency upon anything other than truthful and complete testimony.[1]

---

1. *See Sheriff, Humboldt County v. Acuna,* 107 Nev. 664, 819 P.2d 197, 201 (1991) ("[I]t is not improper for the State to require the promisee to testify in a general manner that is consistent with the information provided to the State, as an inducement for the bargain, subject, of

In most cases reaching a constitutional due process issue, the state has obtained a conviction through use of testimony that was tainted by an improper consistency provision. In this case, the person entering into the improper agreement did not testify. Arguably, however, that person was prevented from supplying evidence helpful to the defendant by reason of the improper consistency provision. Clearly, there is evidence that Ann Fisher made statements inconsistent with those made to the Arizona, Iowa, and Illinois authorities. Yet her agreement required her testimony to adhere only to the official, sanctioned version. Without regard to whether defendant's due process rights were also violated, we have no hesitation in holding that the provision is unenforceable.

Agreements such as the one involved here undermine the reliability and fairness of the trial and plea bargaining processes and taint the truth-seeking function of the courts by placing undue pressure on witnesses to stick with one version of the facts regardless of its truthfulness. The constraints imposed upon the witness bound by a promise to testify with consistency frustrate the jury's duty to determine the credibility of the witness. We have a duty to ensure and protect the fairness and integrity of the judicial system. Our refusal to enforce consistency provisions enhances the reliability of testimony given pursuant to plea agreements, helps ensure the fairness of the trial and plea bargaining processes, and maintains the integrity of the judicial system.

"By enforcing contingent plea bargains, courts sanction the prosecutor's power to persuade an accomplice to disregard his oath of truthfulness in order to obtain penal leniency. This use of the bargaining process by the prosecution perverts the truth-seeking purpose of the judicial system." Yvette A. Beeman, *Note, Accomplice Testimony Under Contingent Plea Agreements*, 72 Cornell L.Rev. 800, 824 (1987). The prosecution should have bargained with Ann only for truthful and accurate testimony. Such an agreement maintains the integrity of the plea agreement process and promotes a fair trial without encouraging unreliable testimony.

All the problems inherent in consistency provisions are exacerbated in this particular case by the original trial judge's inexplicable participation. The letter of agreement expressly provides that Judge Marquardt is a *party* to the agreement, and he signed it as such. He then presided at defendant's trial and, when Ann took the Fifth, the agreement, to which the judge was a party, was received in evidence. Thus the jury knew that the trial judge was a party to Ann's letter of agreement. The agreement, its consistency provision, and the trial judge's participation in the agreement most likely were read by the jury as meaning Ann's testimony, if received, would have been favorable to her and harmful to the defendant. The jury did not hear evidence that Ann had confessed to the crime and had exonerated defendant. Surely the jury was left with the impression that the trial court had placed its imprimatur on the agreement and that it must, therefore, be proper, as well as fair.

The agreement to which the judge became a party was received in evidence. Under Ariz.R.Evid. 605, the judge presiding at a trial may not testify in that trial as a witness. No objection need be made to preserve the point. And, under Canon 3(C)(1)(a), and (d)(iv), Code of Judicial Conduct, a judge should disqualify himself

---

course, to any change mandated by truth if the promisee subsequently admits to falsifying the information upon which the bargain is based."); *State v. Clark,* 48 Wash.App. 850, 743 P.2d 822, 828–29 (1987) (holding it improper to condition plea agreement on witness testifying as to "a particular formulation of the facts or on the achievement of a certain result"); *State v. Burchett,* 224 Neb. 444, 399 N.W.2d 258, 266 (1986) ("It is only where the prosecution has bargained for false or specific testimony, or a specific result, that an accomplice's testimony is so tainted as to require its preclusion."); *State v. McCabe,* 101 Idaho 727, 729, 620 P.2d 300, 302 (1980) ("The promise of leniency in exchange for testimony which is a full, fair and accurate account of the witness's knowledge of facts surrounding the crime is permissible."); *State v. DeWitt,* 286 N.W.2d 379, 384 (Iowa 1979), *cert. denied,* 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980) (citing *Medina* rule with approval).

from a proceeding where he has personal knowledge of disputed evidentiary facts or may be a material witness in the proceeding.

We agree with Judge Dann's statement that, with Judge Marquardt's participation in the agreement, "a violative coercive force was set in motion with unpredictable effect on the witness and the defendant's trial." Ann Fisher took the stand knowing that the trial judge, with whom she had made an agreement, had the power to revoke her letter of agreement if she did not testify consistently with her earlier statements to the authorities. If her agreement were revoked, she faced a possible death sentence. She preserved her agreement by refusing to testify, although her testimony could have been helpful to the defendant. We agree with the trial court that the consistency provision in Ann Fisher's letter of agreement is unenforceable.

## II. Newly Discovered Evidence

 Although satisfied that the consistency provision is improper and prevented Ann from testifying, is there an adequate showing of newly discovered evidence? We think so. The decision to grant a motion for a new trial on newly discovered evidence is within the sound discretion of the trial judge. *See State v. Serna*, 167 Ariz. 373, 375, 807 P.2d 1109, 1111 (1991). "The trial court's ruling [on a motion for new trial based on newly discovered evidence] will not be reversed unless an abuse of discretion affirmatively appears." *State v. Jeffers*, 135 Ariz. 404, 426, 661 P.2d 1105, 1127, *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983).

Much of the previous discussion explaining why the consistency provision is improper also is relevant when considering the adequacy of the showing of newly discovered evidence. To warrant relief, defendant must show that newly discovered, material evidence exists; that due diligence was exercised in discovering the material; that it is not merely cumulative or impeaching; and that if the new evidence were introduced, it would probably change the verdict if a new trial were ordered. *See*

Ariz.R.Crim.P. 24.2(a)(2) and 32.1(e); *Serna*, 167 Ariz. at 374, 807 P.2d at 1110; *Jeffers*, 135 Ariz. at 426, 661 P.2d at 1127; *State v. Salinas*, 129 Ariz. 364, 367–68, 631 P.2d 519, 522–23 (1981).

The trial judge found that all these factors were met. The state's central argument is that Ann Fisher's testimony would not have changed the verdict or sentence and, therefore, Judge Dann abused his discretion in granting a new trial. Some of Ann's testimony at the hearing before Judge Dann related to defendant's intoxication. She stated that defendant was "staggering" drunk and testified as to his alcohol consumption and behavior the day of the killing. At oral argument both counsel agreed, with support in the record, that Ann's prior statements to the police, the statements with which she was to testify consistently, were silent on the subject of defendant's intoxication. Thus, it is clearly new evidence.

Nor is Ann's testimony regarding defendant's intoxication merely cumulative. The testimony offered at trial and at sentencing did not contain an account of defendant's degree of intoxication by anyone during the same period of time that Ann observed the defendant. No one else was with defendant immediately before and at the time of the murder. No other person could relate to the jury what Ann could relate concerning defendant's intoxication.

Judge Dann heard her testimony. He concluded that the new intoxication evidence was relevant to both guilt and sentencing. We agree with him on sentencing. However, case law since his decision may suggest a different conclusion with respect to the guilt phase, because we recently held that intent is not a necessary element of first degree murder where the mental state is alleged alternatively as "intentionally or knowingly." *See State v. Schurz*, 176 Ariz. 46, 54–55, 859 P.2d 156, 164–165 (1993). *See* A.R.S. § 13–503 (jury may consider defendant's intoxication only when the mental state of "intentionally or with the intent to is a necessary element"). Nonetheless, Judge Dann correctly recognized that the intoxication evidence could

change the sentence because intoxication can be a mitigating circumstance in a death penalty case. *See State v. Lopez*, 175 Ariz. 407, 857 P.2d 1261 (1993); *State v. Robinson*, 165 Ariz. 51, 61, 796 P.2d 853, 863 (1990) (citing A.R.S. § 13–703(G)(1)); *State v. Gillies*, 142 Ariz. 564, 571, 691 P.2d 655, 662 (1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985)). Although the intoxication evidence may apply only to the sentencing phase, much of Ann's other potential testimony, such as acknowledgement of her earlier confessions and of her statements exonerating defendant, would clearly be relevant to the guilt phase, and the trial judge so found.

The state argues that the trial judge did not comply with the new trial rule because he did not expressly state that the new evidence "would probably change the verdict." *See* Ariz.R.Crim.P. 32.1(e) ("the evidence probably would have changed the verdict or sentence"). The trial judge stated:

> I cannot say that Ann's testimony at a new trial for the new [sic] defendant is not likely to change the result.
>
> . . . . .
>
> For all the reasons discussed above, this evidence is likewise "new," not cumulative, (Ann being the only other person with the defendant prior to and at the time of the victim's death) and quite possibly capable of changing the outcome at trial or penalty phases.

■ Taking the statement in the context of the trial court's comprehensive statement of its reasons for granting a new trial, *see* Appendix A, we find no reason to believe the trial court was unaware of the proper standard. Quoting the precise language used in the rule is not a prerequisite to granting a new trial. The trial judge satisfied Rule 32.1(e) in his order granting a new trial.

### III. Trial Judge's Order Excluding Testimony Resulting From the Plea Agreement

■ The trial court order excluded from the new trial all of Ann Fisher's statements resulting from the consistency provision of her plea agreement. This is a remedy fashioned in cases where the person with an improper consistency agreement has testified. Where, as here, the agreement has produced no testimony, we believe the limitation is unnecessary, unworkable, and unwise.

Under the circumstances of this case, the limit imposed by the trial court is inconsistent with the basic principle that all the relevant and admissible evidence should be presented at the new trial. The trial court itself recognized that "a jury is supposed to decide one's guilt or innocence on the basis of *all* admissible evidence available to *both* parties." If Ann is released from the improper provision of the agreement at this point without ever having testified under the agreement, there is no need for the limitation.

In *Medina*, 41 Cal.App.3d at 464, 116 Cal.Rptr. at 151, the court held that the "tainted" testimony received at trial as a result of the improper consistency clause could not be used in the new trial. Here, the improper clause has produced no tainted testimony; there is, therefore, no tainted testimony to be excluded. Defendant's rights are appropriately protected by not enforcing the offending clause, by making full disclosure of the terms and circumstances of the agreement, by granting an opportunity to fully cross-examine, and by giving proper instructions to the jury. *See State v. Nerison*, 136 Wis.2d 37, 401 N.W.2d 1, 4–5 (1987).

We believe that the truth-seeking function of the trial will be better served if Ann Fisher can testify free of the unenforceable provision and both parties are permitted to introduce any otherwise admissible evidence bearing on her credibility. This will permit the jury to weigh Ann's testimony fully and to determine her credibility.

### CONCLUSION

We affirm the trial court's order granting defendant a new trial and declaring unenforceable the provision in Ann Fisher's plea agreement requiring that she testify

consistently with prior statements to authorities. We vacate that part of the order "prohibiting the state from using at the new trial or any penalty phase any testimony or statement of Ann Fisher's that resulted from the now invalid provision of her plea agreement." This case is remanded to the trial court for a new trial to be conducted in accordance with the trial court's order and this opinion.

ZLAKET and MARTONE, JJ., concur.

A panel composed of Vice Chief Justice MOELLER, Justice ZLAKET and Justice MARTONE participated in the determination of this matter.

### APPENDIX A

#### 1. INTRODUCTION

The defendant's Supplemental Motion for New Trial has been under advisement. The newly discovered evidence portion of the motion (testimony of Ann Fisher) was heard as a result of the Supreme Court's ruling in *State v. Fisher*, 152 Ariz. 116, 730 P.2d 825 (1986). That opinion was rendered in a Rule 32 proceeding following defendant's 1982 conviction for first degree murder and sentence to death. Before the motion was heard, I allowed the defendant to add issues relating to Ann Fisher's plea agreement, whether denominated "prosecutorial misconduct" or "due process" violations. The matter of the plea agreement was not resolved on direct appeal. See *State v. Fisher*, 141 Ariz. 227, 244, 686 P.2d 750, 767 (1984). Nor has the matter been decided on its merits since then. (See my order of March 4, 1991) I have read and considered all of the testimony at trial and at the presentence hearing, the transcript of the testimony at the hearing on the instant motion for new trial, the several exhibits admitted at that hearing and the legal memoranda of counsel.

#### 2. NEW EVIDENCE CLAIM AND IMPROPER PLEA AGREEMENT

The two issues of newly discovered evidence and Ann Fisher's plea agreement are inextricably intertwined. It is largely because of her plea agreement that Ann Fisher's testimony was not available for trial and is now deemed "newly discovered." One particular term of the plea agreement also bears directly on the credibility and weight to be attributed to her proffered testimony.

The plea agreement will be considered first. Her plea agreement, Exhibit 1 at the hearing on the motion, was expressly conditioned *not* on her telling the truth at her co-defendant husband's trial, *but* upon her testifying *consistently with her earlier statement to police* (Exhibit 2 at hearing). She told the police that her husband, the defendant, committed the killing. She refused to testify at the trial, on advice of her attorney, when called by the defendant. During the trial, however, and one day before the jury found the defendant guilty of first degree murder, Ann called her attorney to the jail to tell him that *she* was the one that killed the victim while her husband slept. (Exhibit 2 at hearing) After her attorney reminded her of the obvious—by her taking the blame she would lose the benefit of her plea agreement (setting a maximum of 2.5 years in prison on a reduced charge), she relented and confirmed her earlier version. (Exhibit 4) Two days later she entered her plea to the reduced charge, a class 5 felony. When, at her plea proceeding, she stated that her husband had not called [sic] her that he planned to take the victim's life, the prosecutor moved to withdraw from the plea agreement. Only quick action by her attorney salvaged the plea for her when her story changed again. (Exhibit 9)

Over the next nine (9) years, Ann's story whether the defendant or she had committed the homicide changed with virtually every telling. (Compare Richmond Deposition and 3/4/91 transcript, pp. 45–46, 49–56; Exhibits 3, 5, 6, and 10)

At the March 4, 1991, hearing on the motion for new trial held before me she testified rather convincingly that the defendant, not she, was guilty of the killing and that she had fabricated all earlier inconsistent versions in an attempt to help him. In

addition, she described his extremely intoxicated condition at the time he struck and killed the victim. (Transcript pp. 31 and 34) She stated that if she had been free to testify truthfully at the trial she would have testified that he was "staggering drunk" at the time. (Transcript 75–76 and 78–81)

This particular provision in the plea agreement was and is clearly improper. The Supreme Court as much as said so on direct appeal. See *State v. Fisher*, 141 Ariz. 227, 244 n. 5, 686 P.2d 750, 767 n. 5 (1984). Cases from other jurisdictions strongly condemn such conditional plea agreements and related practices, characterizing their effect in such terms as "poisoning the well of justice," "tainting the truth-finding process," and denying due process and fair trials. E.g., *Franklin v. State*, 94 Nev. 220, 577 P.2d 860 (1978); *People v. Medina*, 41 Cal.App.3d 438, 116 Cal.Rptr. 133 (1974); *People v. Green*, 102 Cal.App.2d 831, 228 P.2d 867 (1951); and *Rex v. Robinson*, 70 D.L.R. 755, 30 B.C. 369 (1921). See *People v. Fields*, 35 Cal.3d 329, 197 Cal.Rptr. 803, 822–823, 673 P.2d 680, 699–700 (1983). These authorities concur that convictions obtained following the use of testimony influenced by such illegal plea agreement provisions can not stand if the substance and appearance of justice are to be preserved.

There is another serious problem present in this case, one not found in the cases cited above. Here, the offending plea agreement (Exhibit 1 at hearing on new trial motion) named the Court as a "party" to the agreement and the trial judge signed it, agreeing to its terms. This is the same trial judge who accepted Ann Fisher's plea to the reduced charge and who would have, if necessary, presided over her trial for first degree murder and decided on the penalty if she had not fully performed under the illegal term agreed to by the Court. The defendant was well aware of Ann's dilemma under the plea agreement when his trial was presided over by the same judge and when the death penalty was imposed by him. By lending the name, approval and power of the Court to this agreement, an agreement that has warped, distorted and prolonged this case and the truth-seeking process to this date, and, by presiding over the disposition of both cases, one of them resulting in the ultimate sanction, a volatile coercive force was set in motion with unpredictable effect on the witness and the defendant's trial. The appearance if not actuality of justice has been defeated.

On the one hand, a jury is supposed to decide one's guilt or innocence on the basis of *all* admissible evidence available to *both* parties. It was not for the police, prosecutor, or trial judge to decide *which* of Ann's versions, if any of them, was truthful and then structure the case so that her changing and conflicting versions would never surface at the defendant's trial.

Much the same can be said about whether the effects of the plea agreement or her desire to invoke her privilege against self-incrimination prompted Ann to refuse to testify at defendant's trial. The State argues the latter, of course. It should not be permitted to do so, given the nature and purpose of the plea agreement. In fact, it is impossible to answer this somewhat metaphysical question at this late date. I find, consistent with Ann's testimony at the hearings on motion for new trial, that her refusal was based *both* on her lawyer's advice regarding her privilege and because of her natural, strong desire to preserve her plea agreement and eliminate the risk of losing her own life. Thus, assuming such a finding is required in the face of and concerning the State's conduct, I conclude that the illegal plea agreement proximately caused Ann's refusal to testify at trial.

Given her testimony at the new trial hearing before me it is clear that Ann would testify fully at a new trial if the invalid provision in the plea agreement were stricken. Given her repeated changes in position regarding who killed the victim, I cannot say which one she would offer at a new trial once the coercive provision of her plea agreement is removed, let alone which story, if any, a jury would believe. Thankfully, that is for a jury to resolve. In other words, I cannot say that Ann's testimony

at a new trial for the new defendant is not likely to change the result. This is so, in large part, for the reasons cited by the Supreme Court when the matter was remanded for this hearing and ruling on the motion for new trial. *State v. Fisher*, 152 Ariz. 116, 120, 730 P.2d 825, 829 (1986) (physical evidence equally incriminating of both; his confession made only after learning of hers placing blame on him; and new evidence only need raise reasonable doubt, not prove innocence). In any event, the State should not now be permitted to claim that Ann's version that exculpates the defendant is not credible and would not change the result at a new trial *after* the State went to such lengths to keep that version from the jury the first time.

Similarly, Ann's testimony concerning the degree of defendant's intoxication at the time of the killing (Transcript of hearing on new trial motion, pp. 31, 34, 75–81), which bears both on guilt (specific intent being required for first degree murder) and penalty (to show diminished capacity under A.R.S. § 13–703) warrants a new trial. For all the reasons discussed above, this evidence is likewise "new," not cumulative (Ann being the only other person with the defendant prior to and at the time of the victim's death) and quite possibly capable of changing the outcome at trial or penalty phases.

### 3. CONCLUSION AND RELIEF GRANTED

All of these matters taken together lead inevitably to the conclusion that the defendant's conviction and death sentence should not and cannot stand and that he is entitled to a new trial, one unfettered by the constraints and coercive, corrosive effects of Ann's plea agreement, the apparent object of which was to suppress evidence inconsistent with the State's theory of the case, a successful effort joined in by the trial judge, in appearance if not in fact.

The elderly victim in this case was needlessly and brutally murdered. There is substantial evidence at the first trial to show that the defendant was responsible. The verdict and judgment from that trial are entitled to a presumption of validity. Here, however, that presumption has been overcome. No matter how heinous the crime, due process requires a fairer trial than the defendant received, one in which the hands of the prosecutor and the trial judge are not seen or even thought to interfere with the truth-seeking process.

IT IS ORDERED as follows:

1. Granting the defendant's supplemental motion for new trial.

2. Declaring null and void paragraph 4 of Ann Fisher's plea agreement dated January 5, 1982 (Exhibit 1 at hearing on motion for new trial) and prohibiting the State from using at the new trial or any penalty phase any testimony or statement of Ann Fisher's that resulted from the now invalid provision of her plea agreement.

3. Setting a status conference in this division on October 23, 1991, at 10:30 a.m., for the purpose of scheduling trial and other matters.

## EXHIBIT A

IN THE SUPERIOR COURT OF MARICOPA COUNTY, ARIZONA

FILED

1982 JAN -6 PM 4:31

STATE OF ARIZONA, )
 )
 Plaintiff, ) NO. CR-122316
 )
 v. ) LETTER OF AGREEMENT
 )
ANN MARIE FISHER, ) (Judge Marquardt-Division E)
 )
 Defendant. )
 )

 The following parties: the State of Arizona, by Jeffrey Hotham of the Maricopa County Attorney's Office, the defendant Ann Fisher, attorney for the defendant James R. Hart, II, and the Court, hereby agree pursuant to this document to the following disposition of the cause herein;

 (1) That the defendant intends to plead guilty pursuant to a plea offer from the State of Arizona to the crime of Hindering Prosecution, a class 5 felony, in violation of A.R.S. §13-2512, A.R.S. §13-701, A.R.S. §13-702, and A.R.S. §13-801, as amended from the original charge herein of Murder in the First Degree.

 (2) It is agreed that the proposed plea agreement is conditioned upon the termination of the guilt stage of the defendant's co-defendant James Fisher.

 (3) The defendant agrees and expressly waives any and all time limits in her cause, in order for the completion of the guilt stage of the co-defedant's case to occur.

 (4) The plea agreement is further conditioned on an avowal by the defendant that if she is called as a witness in the trial of James Fisher, and required to testify, her testimony will not vary substantially in relevant areas to the statements previously given to investigative officers of the State of Arizona, and the States of Iowa and Illinois.

 (5) The State of Arizona, the defendant, and the Court, further agree that should this contemplated plea agreement for any reason not be accomplished, the defendant shall be entitled to file any pre-trial motions, and the defendant does not waive or give up any defenses due to any violation of applicable time limits.

 This document shall be signed by the parties herein and be made part of the permanent record of this cause.

 DATED this 5 day of January, 1982.

_____
ANN MARIE FISHER
Defendant

_____
JAMES R. HART, II
Attorney for Defendant

_____
JEFFREY HOTHAM
Attorney for the State of Arizona

_____
PHILIP W. MARQUARDT
Judge of the Maricopa County Superior
Court

20