ESPINOSA, Judge,
dissenting in part, specially concurring in part:
¶ 30 I respectfully disagree with a significant portion of the majority’s reasoning because, in my view, State v. Fisher, 176 Ariz. 69, 859 P.2d 179 (1993), is too far removed from the situation at hand to be embraced as controlling authority. The majority also implicitly creates a broad rule for the narrow issue involved in this ease and unnecessarily invalidates a legitimate and reasonable term of the plea agreements here. I concur in the result to the extent that I agree the eodefen-dants may not invoke their privilege to remain silent based on the no-exeulpatory-in-formation clauses, but not because the clause, or its use here, is unconstitutional, and I too would remand this case. In my view, however, we should do so for the trial court to determine whether the state intended to withdraw from the plea agreements if either or both codefendants were to testify on the defendant’s behalf, whether such withdrawal could be legally accomplished under the terms of these agreements, and if not, as I believe to be the case for the reasons outlined below, whether one or both codefen-dants would testify at a new trial. If they would decline, a potential eventuality the majority does not address, no new trial would be warranted and Sanchez-Equihua’s convictions should stand.
¶31 In Fisher, the agreement with the cooperating codefendant specifically contemplated her testimony at trial and included an express “condition” that if “called as a witness in the trial of James Fisher ... her testimony w[ould] not vary substantially in relevant areas to statements previously given investigative officers.” 176 Ariz. at 71, 859 P.2d at 181 (alteration in Fisher). This clause was held to be an unenforceable “consistency provision” that tended to coercively script the cooperating witness’s testimony in violation of due process. Id. at 74-75, 859 P.2d at 184-85. As the majority points out, other courts have come to similar conclusions on comparable facts to Fisher, involving express strictures on trial testimony in every case cited. But in sharp contrast to such “testimonial” plea agreements, the form of agreement used here merely provided: “Defendant agrees that he/she has no exculpatory information as to any co-defendant.” It is clear that no testimony by either codefendant in this case was required or sought. The majority’s decision today, however, could broadly invalidate any provision conceivably *62 construed as influencing a witness’s decision to testify. Given the realities of plea bargaining and the sometimes complex issues involved, this takes Fisher too far.
¶ 32 Significantly, there is nothing in the codefendants’ plea agreements conditioning their plea bargains on any testimony, let alone consistent testimony at the defendant’s trial. Cf. Fisher, 176 Ariz. at 72-73, 859 P.2d at 182-83 (“avowal” by cooperating witness that testimony “will not vary substantially” from previous statements to law enforcement). Nor do the agreements set.forth any consequences for any potential or perceived violation of the codefendants’ representations that they “ha[d] no exculpatory information.” Although the majority insists that language pertaining to a “fail[ure] to comply with any of the [agreement’s] provisions or conditions” would permit the state to withdraw from the agreement if a codefendant later provided such information, on closer examination, this interpretation is inconsistent with our precedents and difficult to justify.
¶ 33 It is well-established that once a plea agreement has been accepted by the parties and court, the state generally may not rescind the agreement and reinstate the prosecution because jeopardy has attached. See Aragon v. Wilkinson, 209 Ariz. 61, ¶7, 97 P.3d 886, 889 (App.2004); Coy v. Fields, 200 Ariz. 442, ¶ 5, 27 P.3d 799, 801 (App.2001); Dominguez v. Meehan, 140 Ariz. 329, 331, 681 P.2d 912, 914 (App.1983). But when a defendant breaches a material term of the agreement, he waives double jeopardy, and the state may be permitted to withdraw from the plea. See Coy, 200 Ariz. 442, ¶ 5, 27 P.3d at 801. This waiver is strictly limited, however, to the specific circumstances identified in the agreement as permitting withdrawal. Thus, “the pivotal question ... is whether [defendant] breached the agreement.” Id. ¶ 6; see also Aragon, 209 Ariz. 61, ¶ 11, 97 P.3d at 890 (reversing grant of state’s motion to withdraw after change in sentencing law because defendant did not actually breach any term of the plea agreement). Here, because no testimony was required or, for that matter, prohibited by the plea agreements as in Bhagwat v. State, 338 Md. 263, 658 A.2d 244, 249 (1995), cited by the majority, it is difficult to see how either codefen-dant’s testifying in the defendant’s trial could constitute a “fail[ure] to comply” and, more importantly, be deemed a material breach of their plea agreements.
¶ 34 It should be emphasized that the provision at issue here — presented in the agreement as a “special term” — merely described the codefendants’ asserted lack of exculpatory information. Nowhere is this claim made a condition of the plea, unlike the term directly following it in Orantes-Lerma’s agreement, which specifically states: “Plea is contingent on co-defendant, Veronica Sanehez-Equihua, accepting plea.”[6] Absent any requirement or compulsion for the eodefendants to testify, it appears the special term primarily served a strategic purpose of documenting and preserving the codefendants’ statements in a significant manner as part of their pleas, and helped ensure compliance with the state’s obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
¶ 35 I do not merely “suggest” the latter purpose as posited by my colleagues. Indeed, contrary to the majority’s speculation, the prosecutor expressly stated in clear and certain terms, on the record, that this clause was “put in so that it alerts defense counsel ... [and the pleading] defendant that if they have exculpatory information[,] that’s something they need to provide to us.” The prosecutor continued,
what typically happens is a defense attorney is presented with one of these agreements, and talks to their client and finds out they do have exculpatory information. They contact our office____Then ... that information is investigated. Sometimes it results in a dismissal of charges against [a] codefendant[.]
Neither the trial court nor any of the three defense counsel present questioned or refuted that legitimate motive. And it was in this context that, rather than “representing] that the term was inserted for the purpose of *63 Mndering particular testimony,” the prosecutor further added
[B]ut it’s also designed to protect us in situations where ... there’s no exculpatory information, but you have one codefendant who takes a plea and then decides to take the fall for another codefendant ... I don’t believe [this type of clause] induces anybody to testify in a particular way or to not testify, and ... as the Court’s heard, a couple times now, honestly, it makes no difference to me whether or not these people testify.
Indeed, the record reflects that the prosecutor stressed, on no fewer than three occasions, that she had no objection to the eode-fendants testifying, noting there was “plenty of information ... to impeach them,” and stating, “If they testify, I cross-examine them. That’s fine.” Such “information” included the eodefendants’ prior statements and was the fair and permissible “actual use” in this case of the special term in the plea agreements. See State v. Campoy, 220 Ariz. 539, ¶ 24, 207 P.3d 792, 801 (App.2009) (rule barring admission of statements made in connection with plea bargain designed to promote candor during process; “it is not intended to provide defendants with a shield from the consequences of providing law enforcement officials with untruthful information in order to obtain a favorable plea agreement”).
¶ 36 As the majority observes, the prosecutor also stated there was a “possibility that should they testify and should [her] office review this and feel a material portion of the plea was violated, there’s a chance” her office could seek to withdraw the plea agreements. But that compounded conjecture should carry little weight. As explained above, construing the special term in question as a material condition of a plea agreement that neither requires nor prohibits testimony is problematic. And case law would strongly suggest that a merely arguable breach of an ambiguous provision[7] would not subject a defendant to any danger of rescission and double jeopardy. See Aragon, 209 Ariz. 61, ¶ 12, 97 P.3d at 890 (alleged violation of plea bargain’s purpose would not be inferred to constitute a breach absent defendant’s express agreement); Coy, 200 Ariz. 442, ¶¶ 9-10, 27 P.3d at 802 (no withdrawal permitted where alleged breach did not materially alter plea bargain).
¶37 Furthermore, notwithstanding comments by counsel and an unsworn statement by codefendant Orantes-Lerma, the substance of what either eodefendant might actually testify to under oath on the witness stand is a matter of additional conjecture. But even if Orantes-Lerma were to provide exculpatory testimony on behalf of SanchezEquihua, his spouse, consistent with a post-plea statement he apparently made during his presentence interview,[8] he could not be found in violation of the special term of his plea agreement unless the state could establish that he clearly had misrepresented his knowledge at the time he entered into the agreement, rather than later on the witness stand. In my view, that scenario is too speculative and this issue too far afield from Fisher to conclude that the special term in question is unconstitutionally coercive and improper. Cf. State v. Rivera, 210 Ariz. 188, ¶ 17, 109 P.3d 83, 86 (2005) (“All accomplice plea agreements put some pressure on a cooperating witness.”); Coy, 200 Ariz. 442, n. 4, 27 P.3d at 801 n. 4 (waiver of double jeopardy strictly limited to reasons outlined in plea agreement); Dominguez v. Meehan, 140 Ariz. 329, 681 P.2d 912 (App.1983) (same), approved, 140 Ariz. 328, 681 P.2d 911 (1984).
¶ 38 Finally, my colleagues imply that I have “focused” too narrowly and “facially” on the plea agreement term at issue instead of Sanehez-Equihua’s constitutional rights. But it is only through the majority’s broad and speculative interpretation of that ambig *64 uous provision that it concludes there has been a “constitutional violation” by the state. Contrary to the majority’s suggestion, I do not ignore the record here, which includes the codefendants’ voluntary representations in written plea agreements and in court that they lacked exculpatory information, the absence of any express condition in the plea agreements that could be “violated” by either codefendant testifying at Sanchez-Equihua’s trial, and, how exactly her Sixth Amendment rights are abrogated by the codefendants’ arguably superficial invocation of double jeopardy here. This is not a case like Earp v. Ornoski, 431 F.3d 1158, 1168 (9th Cir. 2005), cited by the majority for the principle that the government may not “substantially interfere” with a defense witness’s choice to testify, in which the prosecutor threatened and verbally abused a cooperating inmate witness, forced him to recant a previous statement, and caused him to be transferred to a less desirable jail facility. Though in a different context, the Supreme Court has observed: “[A] trial court may not ignore the fundamental character of the defendant’s right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests.” Taylor v. Illinois, 484 U.S. 400, 414, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).
¶ 39 Accordingly, although the parties generally presumed, and the trial court found, that Sanchez-Equihua’s codefendants could be placed in jeopardy as a result of the no-exculpatory-information clause, thus depriving her of potential witnesses, a closer examination of the plea agreements and our case law strongly suggests otherwise. I would therefore remand this ease for the trial court to reconsider its finding that jeopardy would attach if the codefendants were to testify, taking specific offers of proof and additional evidence if need be.[9] Although it is possible either or both codefendants could potentially face additional consequences, for example as a result of perjury charges if such were warranted,[10] it would not be due to the special term in their agreements. If the codefendants would nevertheless decline to testify, I would affirm Sanchez-Equihua’s conviction.

. It is notable the state could have successfully sought to withdraw from the plea agreements on this clear basis had it wished to, which had nothing to do with the no-exculpatory-information term at issue here.

. At one point, counsel for codefendant Gutierrez noted that if the codefendants were to testify, and if they "provide[d] information [the prosecutor]'s supervisor would believe is exculpatory ... and attempts to set the plea aside, then I guess the next phase for us would be ... an argument [to] the Court about what’s exculpatory”?

. During a discussion with counsel, the trial court informed the parties that the codefendant’s "presentence report ... says that he exonerates her, she had nothing to do with it, she was just there.”

. When this issue was discussed during a trial break, counsel for Sanchez-Equihua noted "[r]ight now we’re dealing with speculation. We have no idea if the state intends to pull these [plea agreements].”

. At one point in the discussions, the prosecutor noted that the codefendants had been placed under oath when they changed their pleas, and might face "some sort of perjury charge if they said something under oath and now they’re saying they didn’t.”